THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EMILY GALLETTI, Appellant.

First Department, December 30, 1976

*Spiros A. Tsimbinos* of counsel *(Salaway & Schreiber,* attorneys), for appellant.

*Gerard Loughran* of counsel *(Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

BIRNS, J. The defendant appeals from a judgment of the Supreme Court, New York County (AARONS, J.), rendered June 24, 1976 convicting her after a jury trial of criminal sale of a controlled substance in the first degree (Penal Law, § 220.43) and two counts of criminal sale of a controlled substance in the second degree (Penal Law, § 220.41). She was sentenced to concurrent terms of 15 years to life and six years to life.

She claims her guilt was not established beyond a reasonable doubt; that she was denied a fair trial when the prosecutor

introduced into evidence irrelevant and collateral matters; that the Trial Judge neglected to instruct the jury properly concerning the absence of a confidential informer's testimony; and that his charge on her alibi defense was inadequate.

We shall be concerned only with the second of these contentions, and in view of the disposition made herein, the discussion of the other points is unnecessary.

The indictment containing nine counts charged the defendant with sales of cocaine on March 19, 26, and April 10, 1974, but it was on May 1 that she was placed under arrest. On that date the police officers had obtained a warrant to search the apartment, located on Eldridge Street, in which the sales allegedly occurred.

The principal witness called by the People was Detective Pons of the Drug Enforcement Task Force. He testified that on each of the dates specified in the indictment he negotiated the purchase of narcotics from the defendant; that such negotiations occurred in the said apartment and it was there that he received from her the narcotics which in due course were given to his backup team on the date of each purchase and then to the police chemist for analysis in accordance with police procedures.

The price for the narcotics purchased on each of the specified dates was $370, $795, and $1,000, respectively. Detective Pons' testimony as to his procedures before and after leaving the apartment was supported by various members of his backup team. It was developed on cross-examination that Detective Pons as a young man had lived on Eldridge Street and while residing there had seen the defendant in the neighborhood and had played ball with one of her sons.

In the main, the defense rested on the testimony of the defendant who denied each of the sales attributed to her. She asserted that she knew Detective Pons for years, knew that he was a police officer and insisted that he was out to get her because her sons were involved with narcotics. Although she denied she was the occupant of the apartment in which the sales occurred, she admitted she had lived there and had "left" it to a friend, Michael Cepeda, and that during the months in question she lived at a new and different address, in Queens.

During cross-examination she stated that she was engaged in factory work up to 1966 but thereafter until 1973 was on welfare, and since then had no other means of income except

moneys which she had received from her sons. She also testified that on March 19, 1976, one of the dates set forth in the indictment, she attended a birthday party in Rochester with one Enrique Martinez, who took the stand to support that alibi.

At this point in the trial, the issue to be resolved was whether the defendant had actually made the sales as alleged. The jury's ultimate resolution depended upon the extent to which it would credit the testimony of Detective Pons or the defendant.

With the evidence so balanced, the District Attorney offered in "rebuttal", testimony that at the time of her arrest the defendant had in her handbag which the officers examined approximately $1,500 in cash and four bank books totaling over $25,000 (all bearing her name except one for $122).*

The defendant had offered no evidence as to the state of her finances. The prosecution, then, was presenting entirely new evidence, which in no way rebutted any evidence offered by defendant (cf. CPL 260.30, subd 7; Richardson, Evidence [10th ed], § 517).

The main consideration, however, as to the admissibility of this evidence was its relevancy. Evidence is relevant if it is legally probative of some matter to be proved (Thayer, Preliminary Treatise on Evidence [1898], pp 264-265, 530). Even if relevant, evidence may be excluded when its prejudice will outweigh its probative force (for discussion, see, Fisch, Evidence, § 3). There was no showing that the cash or the deposits reflected in the bank books found in her bag were in any way connected with the alleged sales. This testimony provided a springboard for the prosecutor's improper argument in summation, "Now, look, another thing was brought out, another point, the defendant was in the position of having to disclaim large sums of money. It should be very indicative of dealing in drugs". (See *People v Childers,* 28 AD2d 725.)

---

\* On sur-rebuttal, the defendant denied having $1,500 in cash in her handbag and testified in explanation of the funds in the bank books. She said that two accounts ($10,519.17 and $920 respectively) named her as guardian ad litem for two of her children and represented the proceeds of settlements of accident cases, and that the third account ($14,273.49), in the name of the defendant and one of her children, represented money given to her by three of her children. The fact that she so testified does not vitiate the conclusion that the "rebuttal" testimony on the subject of the cash and bank books and the prosecutor's comments in summation in reference thereto were improper.

The District Attorney asserts that the receipt of such testimony was justified in that "[t]he prosecutor merely tried to demonstrate to the jury by surrounding circumstances, namely, the balances in the accounts and $1500 in cash in her pocketbook that the defendant was simply unworthy of belief".

Even if one were to concede that the defendant's personal finances had been injected by the defendant during the defense case by way of her testimony on cross-examination in which she admitted being on welfare, the "rebuttal" testimony was improper. It cannot be argued that her answer was relevant to the issue of the alleged sales. At most, her answer raised a collateral issue, as to her means of support. It is axiomatic that the prosecution may not introduce extrinsic evidence to contradict a witness' answer concerning collateral matters. In *People v Schwartzman* (24 NY2d 241, 245) the Court of Appeals said: "The general rule is that a cross-examiner cannot *contradict* a witness' answers concerning collateral matters by producing extrinsic evidence for the *sole purpose* of impeaching credibility. * * * However, an exception to this rule exists where the evidence sought to be introduced is relevant to some issue in the case *other than* credibility".

The District Attorney's reliance on *People v Catalanotte* (36 NY2d 192, 195) is misplaced. Although a defendant may offer in rebuttal evidence to explain some "admissions" made on cross-examination, the Court of Appeals emphasized "[t]he prosecution could not have offered independent evidence to disprove the correctness of any of defendant's denials just because they resulted from the exploration of the collateral issue (Richardson, Evidence [10th ed.], § 491)."

Thus, the defendant was not afforded her constitutional right to have the jury determine her guilt or innocence strictly upon the evidence presented concerning the alleged transactions of March 19, 26, and April 10, 1974.

In our view of the case, there is no need to discuss the other claims raised by the defendant. The judgment should be reversed, on the law, and a new trial ordered.

MARKEWICH, J. P., MURPHY, CAPOZZOLI and NUNEZ, JJ., concur.

Judgment, Supreme Court, New York County, rendered on

June 24, 1976, unanimously reversed, on the law, and a new trial directed.