■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALI RAH-MAN, Appellant.—Judgment, Supreme Court, New York County, rendered July 14, 1976, convicting defendant, after a jury trial, of sale of a controlled substance in the third degree, affirmed. Defendant was indicted for two counts each of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree. At trial his defense was based on an alibi that he was visiting a friend and his aunt (both of whom testified) on the days the sales took place, and there was an intimation that the seller was not defendant, but a look-alike named Gary Brown. Defendant was acquitted of the February 20, 1975 buy, but convicted of selling heroin on March 5, 1975. Prior to trial, defendant moved to preclude the People from using three prior convictions (all drug related) to impeach him during cross-examination, if he chose to testify. The basis of defendant's objection as urged at this *Sandoval* hearing was that allowing defendant to be so cross-examined where the present charges are also drug related would be highly prejudicial to defendant. The court ruled that the prosecutor could question defendant about two convictions, one in 1969 and one in 1971 for possession of dangerous drugs, but prohibited questioning concerning a 1970 conviction for attempted possession of dangerous drugs. The dissent views this ruling as error. We disagree. It is acknowledged that "in the prosecution of drug charges, interrogation as to prior narcotics convictions * * * may present a special risk of impermissible prejudice" *(People v Sandoval,* 34 NY2d 371, 377). However, the key is to "determine whether and to what extent the particular defendant has met his burden, and it is his, of demonstrating that the prejudicial effect of the admission of evidence thereof for impeachment purposes would so far outweigh the probative worth of such evidence on the issue of credibility as to warrant its exclusion" *(supra,* p 378). At the outset it is observed that the fact that a defendant may specialize in one type of illegal activity, for example, drugs, does not *ipso facto* shield such defendant from having prior convictions used to impeach his credibility. To hold otherwise defies common sense and, in effect, serves to make the criminal specialist a member of a chosen class, free from the burden of having his credibility impeached for prior convictions relating to his specialized field of endeavor—a result not envisioned under *Sandoval.* There is no basis for concluding on this record that defendant was the only available source of testimony in support of his defense. Indeed, defendant's decision not to testify did not affect the validity of the fact-finding process. Defendant's alibi defense was conveyed to the

jury respecting the March 5, 1975 heroin sale through two alibi witnesses. Further, defendant's strained appellate argument that his testimony would be crucial to the development of a misidentification defense, i.e., the real culprit was a look-alike named Brown, a long-time acquaintance of defendant who sometimes stayed in defendant's apartment, is without merit. It is alleged that because of defendant's failure to testify, the pictures of Brown were kept from the jurors who were thereby deprived of crucial evidence of misidentification. Defendant, however, was not the only person who could have laid a foundation for the introduction of the photographs. Robin Taylor, the "official" tenant of the apartment in which the first sale occurred, was apparently available to testify, but defendant chose not to call her. Respecting an alibi witness produced by defendant, his aunt, the prosecution was permitted to ask her on cross-examination whether her husband had been the subject of a criminal investigation. The purpose of such question was to show *her* hostility toward the prosecution because of her husband's recent trouble with the authorities. In a pretrial interview the aunt allegedly had remarked respecting her husband's murder conviction that the District Attorney, the United States Attorney, the FBI and the police were all conspiring against her. In announcing his intention to probe this bias in colloquy at the Bench between defense counsel, the Trial Judge and the prosecutor, the latter obtained a ruling that a question as to the *conviction* of the witness' husband would be prejudicial, whereas merely inquiring if he had ever been the subject of a criminal investigation might properly expose the witness' belief about a conspiracy of the authorities *against her,* thereby revealing a bias against the prosecutors of her nephew. Impeachment is permissible to probe prior declarations tending to show bias or hostility against the other party, here, the People *(Schultz v Third Ave. R. R. Co.,* 89 NY 242; Richardson, Evidence [10th ed], § 503). The following testimony relevant on the issue of bias occurred: "Q. Now, Mrs. Johnson, was your husband ever the subject of a criminal investigation? A. Yes, he [was]. Q. Mrs. Johnson, did you tell Mr. Sigfried that you thought the Police Department, the District Attorney's Office, and Judges had conspired against you and your husband? A. Not in those words as you indicated, no, sir. I spoke with him, not actually to him. I was speaking to you. And I was speaking as far as justice was concerned. * * * Q. But you recall making— what did you say? A. I came downtown to try to help you, what I told you on the telephone. I was coming down. * * * I had information to help you, to help the case. Q. Mrs. Johnson, excuse me. What did you say? Did you make that remark? A. I said I was coming to help the case because I want to see justice done." Thus, read in context the one question and answer on the subject of a criminal investigation of this witness' husband is innocuous and, at most, harmless error. The witness resisted any attempt to draw a link between her credibility and the criminal investigation of her husband. Defendant's remaining contentions have been examined and are found to be without merit. Concur—Lupiano, Silverman, Fein and Sullivan, JJ.; Murphy, P. J., dissents in a memorandum as follows: The prosecution's case relating to the alleged heroin sales of February 20 and March 5, 1975, hinged primarily upon the identification of the defendant made by an undercover officer named Galasso. Another officer, Williams, and a building manager, Friedman, buttressed Galasso's description of the clothes worn by the defendant on various occasions. While the defendant did not testify at trial, he did call two alibi witnesses, Forbes and Johnson, to disprove the charges relating to the sale of March 5, 1975. The jury acquitted the defendant of the sale and possession charges pertaining to the events of

February 20, 1975, but it convicted him of selling heroin on March 5, 1975. In view of the defendant's acquittal on the earlier charges, it may be safely said that his guilt on the latter charge presented a close question for the jury. With this fact in mind, I would reverse the judgment of conviction on the following two grounds. First of all, at the *Sandoval* hearing, the court prohibited the prosecution from asking the defendant about a 1971 conviction for attempted possession. The court also prohibited the prosecution from asking questions about two sales that formed a partial basis for defendant's convictions of possession in 1969 and 1971. However, the court otherwise permitted the prosecution to explore the facts surrounding the 1969 and 1971 convictions. The law is clear that a defendant, who chooses to testify, may be cross-examined concerning any immoral, vicious or criminal acts of his life which have a bearing on his credibility as a witness, provided the cross-examiner questions in good faith and upon a reasonable basis in fact. Nonetheless, a defendant should not be questioned as to such acts when the obvious intent is to show from character or experience a propensity to commit the crime for which defendant is on trial *(People v Duffy,* 36 NY2d, 258, cert den 423 US 861). The Court of Appeals, in *People v Sandoval,* (34 NY2d 371, 377-378), has aptly observed that "in the prosecution of drug charges, interrogation as to prior narcotics convictions (unless proof thereof is independently admissible) may present a special risk of impermissible prejudice because of the widely accepted belief that persons previously convicted of narcotics offenses are likely to be habitual offenders *(United States v. Puco, 453 F. 2d, at p. 542, n. 9)." To prevent the jury from drawing any unfair inference as to defendant's guilt in this proceeding from his prior drug convictions, the court should have precluded cross-examination with regard to all drug-related convictions (People v Carmack, 52 AD2d 264).* By denying a portion of the *Sandoval* motion, the court committed prejudicial error since it effectively foreclosed the defendant from taking the stand in this closely contested case. *(People v Batchelor,* 57 AD2d 1059). Secondly, during the course of the trial, the prosecution wished to show that Etta Johnson, an alibi witness, was biased and hostile. Johnson's husband had previously been convicted for murder in the Federal court system. In a pretrial interview, Johnson had expressed her belief that the District Attorney and the Federal law enforcement officials were conspiring against her and her husband. The trial court would not permit the prosecution to cross-examine Johnson about her husband's murder conviction but it did allow the prosecution to question her, over objections, about the fact that her husband was the subject of a criminal investigation. The extent to which disparaging questions, not relevant to the central issue, but bearing on the credibility of a witness, may be put upon cross-examination is discretionary with the trial court, and its rulings are not subject to review unless it clearly appears that the discretion has been abused *(La Beau v People,* 34 NY 222, 230; Richardson, Evidence [10th ed], § 500). In this proceeding, the prosecution maintains that it was proper to interrogate Johnson about the fact that her husband was the subject of a criminal investigation to show her bias and hostility to the People's case. (Richardson, Evidence [10th ed], § 503). Although that line of questioning might have been relevant for impeachment purposes, it should be stressed that evidence may be excluded when its prejudice will outweigh its probative force (cf. *People v Galletti,* 55 AD2d 154, 156). Thus, based upon this highly collateral course of questioning, the jury might have improperly inferred that Johnson herself was of a criminal bent. Moreover, the jury might have erroneously concluded that Johnson's testimony was less than credible simply because

her husband had been under criminal investigation. Hence, the court abused its discretion in admitting this line of cross-examination for it undoubtedly diverted the jury's attention from the true issues bearing upon identification and alibi. (cf. *State v Lora,* 305 SW2d 452). In any event, had Johnson's husband taken the stand, he could not have been impeached by the fact that he was under investigation or even under indictment *(People v Morrison,* 195 NY 116). A fortiori, the prosecution should not have been permitted to impeach Johnson with questions it could not have propounded to her husband. Accordingly, I would reverse the judgment of conviction, grant the *Sandoval* motion and order a new trial.