THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT MILOM, Appellant.

First Department, June 10, 1980

## APPEARANCES OF COUNSEL

*Robert Milom,* appellant *pro se* and *Donald S. Hillman* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Donald J. Siewert* of counsel *(Brian Rosner* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

**OPINION OF THE COURT**

LUPIANO, J.

The People's evidence consists mainly of testimony by Police Officer Anderson that on June 12, 1977, he peered through the partially opened window of the brightly lit rest room at the rear of premises used as a bar. He observed the defendant enter with three or four other individuals. Defendant took a clear plastic bag containing white powder from the crotch of his pants and used a silver plastic spoon to scoop powder out of the bag. Although their backs faced the window, the officer concluded that the defendant's companions were snorting, i.e., partaking of the white powder the defendant offered to them. Defendant spooned the white powder from the bag separately for each of his companions. As defendant raised the spoon to each man's face, Anderson could see the powder in the spoon. As defendant withdrew the spoon after the powder had been "snorted," Anderson saw that the spoon was empty. He drew his conclusion from the motions they made with their hands, as well as from the noises they made. Anderson radioed his observation, including a description of defendant, to back-up officers who then entered the tavern. Anderson then observed a fellow officer enter the rest room and direct defendant and his one remaining companion (the others having left in the interim) to place their hands on the wall. Defendant dropped the contraband as he complied with this directive. Anderson then left his observation post, entered the tavern, proceeded to the rest room, and upon entering the latter, retrieved the bag of narcotics (cocaine) from the floor. Anderson preliminarily frisked defendant for weapons in the rest room. At the station house, Anderson searched the defendant and found a silver quarter teaspoon (measuring spoon) and $1,111 cash[1] in defendant's pocket. The police testimony was credited by the Justice presiding at the suppression hearing and subsequently by the jury at trial, resulting in a judgment convicting defendant of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in

---

1. References to the sum of money defendant was found to possess at the time of his arrest vary in the record, the sum being set forth in some instances as $111 and in other instances as $1,111. Written communication emanating from defense counsel and the District Attorney's office, received by this court in response to our inquiry, discloses unanimous agreement that the amount found was $1,111 and that the references to $111 contained in the record are inadvertent transcription errors.

the fifth degree.[2]

On appeal, defendant urges that Officer Anderson's surveillance of the rest room constituted a search within the meaning of the Fourth Amendment not justified by exigent circumstances and without benefit of a warrant. He concludes that since the narcotics, the spoon and the money were seized as a result of the surveillance, these items should be suppressed. It is recognized that conduct which a person seeks to preserve as private, even in a place accessible to the public, may be constitutionally protected, if that conduct occurs under circumstances in which the person may reasonably expect to be free from intrusion (see *Katz v United States,* 389 US 347, 351-352 [opn of court], 361 [HARLAN, J., concurring]). Thus, visual surveillance into an enclosed area, such as a toilet stall in a public rest room, has been held to constitute a search in violation of the Fourth Amendment because such an area, though accessible to the public, is private while it is in use and the temporary occupant may reasonably expect to be free from intrusion *(People v Triggs,* 8 Cal 3d 884). However, not every instance of police surveillance in a public rest room constitutes a Fourth Amendment search.

Defendant's conduct did not occur while he was the temporary occupant of such an enclosed area. Defendant, upon entering the unlocked rest room, remained in the "public" area and did not enter the toilet stall which provided some measure of privacy. He distributed the cocaine in the common or public area of the rest room. "There is no justified expectation of privacy as to incriminating conduct which occurs in the public area of a rest room rather than inside one of the stalls" (1 LaFave, Search and Seizure: A Treatise on the Fourth Amendment, § 2.4, p 346). Accordingly, under the circumstances herein, the police surveillance did not violate a recognized privacy interest of defendant, and did not constitute a search within the ambit of the Fourth Amendment.

Relevant to Officer Anderson's testimony as to the $1,111 discovered on defendant's person in the subsequent search, the

---

2. The two-count indictment herein charged the defendant with (1) criminal possession of a controlled substance in the third degree in that on or about June 12, 1977, he knowingly and unlawfully possessed a narcotic drug (cocaine) *with intent to sell same,* and (2) criminal possession of a controlled substance in the fifth degree in that on or about June 12, 1977, he knowingly and unlawfully possessed a substance of an aggregate weight of one-eighth ounce and more containing a narcotic drug (cocaine).

prosecutor urged in summation that defendant's possession of the money, when considered in light of his admission that he had been working part time in a grocery store, showed that defendant possessed the cocaine with intent to sell. In marshalling the evidence on the issue of intent to sell, the trial court reminded the jury of the prosecutor's position that the money demonstrated defendant's intent to sell.[3] Defendant contends that his possession of the money was irrelevant to any issue at trial and that admission of testimony as to the money was highly prejudicial, since such possession tended to show proof of possible other crimes having no apparent relationship to the crimes charged. Essentially, defendant claims that the prejudicial effect of this testimony outweighed any probative value it may have had.

The common sense dictionary definition of "sell" and "sale" denotes the transfer or conveyance of property from one to another for a sum of money or any other consideration (see, e.g., Webster's New Collegiate Dictionary). Thus, in the ordinary sense of the term "sell," defendant's intent to sell could not be inferred from his mere possession and distribution of the cocaine. Of course, the definition of "sell," within the terms and provisions of the Penal Law, is expanded well beyond the ordinary meaning. Subdivision 1 of section 220.00 of the Penal Law states: " 'Sell' means to sell, exchange, give or dispose of to another, or to offer or agree to do the same." Of itself, this distinction between the ordinary meaning of "sell" and the expanded Penal Law definition does not preclude the People from proving a defendant's intent to "sell" in the ordinary sense of that term. This necessarily follows from the fact that the expanded meaning of the term "sell", as set forth in the Penal Law, embraces the ordinary sense or meaning of that word.

We are not confronted here with an indictment charging defendant with a single sale, i.e., with criminal sale (not sales) of a controlled substance. The crime charged herein of possession of a controlled substance in the third degree, i.e., possession with intent to sell, clearly distinguishes the instant appeal from *People v Jones* (62 AD2d 356) which concerned

---

3. The charge on the issue of intent states, *inter alia:* "The People urge that such intent is demonstrated by the evidence that the defendant actually put small spoonfuls of the powder up to the face, the faces of the other three men, the quantity of the material, three-eights of an ounce plus fifty-one grains and the amount of money that the defendant had on his person at the time of the arrest [$1111]."

itself with a defendant who was charged with only a single sale. Evidence of defendant's involvement in the narcotics trade, in the sales of narcotics, would have been irrelevant had he been charged with a single sale, for in that case the People would not have had the burden of establishing any specific intent, but only that defendant knowingly made the sale. Here, the jury had to determine whether defendant had the intent to sell. As emphasized by this court in *People v Jones (supra)* and implicitly conceded by defendant, the money tended to show that defendant was a seller of narcotics. Its introduction into evidence would support, under the circumstances herein, an inference that defendant intended to make sales on the occasion in the rest room. Again, the fact that defendant was observed engaging in separate transactions with each of his companions, rather than a single transaction with only one individual, serves to distinguish this matter from *People v Lizzarra* (70 AD2d 572). Research has disclosed no compelling authority for the proposition that the introduction into evidence of money found on a defendant's person after his arrest for the crime of criminal possession of a controlled substance in the third degree is improper *under any circumstances,* despite whatever probative value the money may have in establishing defendant's intent to sell because of the prejudicial effect, of whatever degree, generated by the implication that defendant committed other crimes. To reiterate, the narcotic activity observed by Officer Anderson consisted in part of defendant's giving some of the narcotic, not to one only, but to each of his companions. Such activity serves as predicate for a common sense inference that defendant is engaged in narcotic activity as a trade, not just as an isolated event—a single sale or intent to make a single sale.

Further, even assuming the admission of his testimony relating to the $1,111 was improper, the error was one not likely to have affected the verdict. We are persuaded, in light of the record herein, that, assuming the admission of testimony as to defendant's possession of $1,111 in cash at the time of his arrest to be irrelevant and, therefore, improper, such error was harmless. In light of Officer Anderson's testimony that he saw defendant distribute the cocaine to his companions, i.e., that he observed actual sales, his testimony concerning the money did not significantly affect the outcome of the trial. The jury was explicitly instructed that any delivery of cocaine to another is a sale under the Penal Law,

regardless of whether the seller receives any compensation. Having heard that instruction, the jury would clearly have convicted defendant of possession with intent to sell (criminal possession of a controlled substance in the third degree— Penal Law, § 220.16, subd 1), even if the money had not been mentioned, provided only that they accepted Officer Anderson's account of what he saw in the rest room. Both the People and the defendant stress that the real issue before the jury was simply that of credibility. Viewing the testimony on both sides as a whole, guided by common sense, it is highly unlikely that the jury seized on the money as a critical factor in determining the witness' relative credibility. Given this unlikelihood, together with the overwhelming evidence of guilt supplied by Officers Anderson and Mahon, there is no significant probability that defendant would have been acquitted on either count had the jury not been told about the money. Accordingly, assuming the admission of Officer Anderson's testimony about the money was improper, the impropriety was harmless, as there is no significant probability, apart from a rational possibility, that the jury would have acquitted the defendant but for this error (see *People v Crimmins,* 36 NY2d 230, 242).[4]

Further it is noted that, assuming the admission of such testimony to be error and further assuming such error to have improperly affected the verdict on a count of possession with intent to sell, such error still would not mandate reversal of defendant's conviction of possession of a controlled substance in the fifth degree—possession of one-eighth ounce of a narcotic drug. The testimony as to the money was offered solely on the issue of defendant's intent to sell. The evidence that defendant possessed one eighth of an ounce of cocaine, without reference to any intent to sell, was overwhelming. As to this count, the error, assuming there was error, was patently harmless (see *People v Lizzarra,* 70 AD2d 572, *supra).*

In conclusion, it is observed that the People urgently endeavor to frame the issue, not in the context of harmless error, but in the context of proper testimony relevant to the intent of the defendant to sell the narcotic in the traditional

---

4. "We hold that an error is prejudicial in this context if the appellate court concludes that there is a significant probability, rather than only a rational possibility, in the particular case that the jury would have acquitted the defendant had it not been for the error or errors which occurred" (see *People v Crimmins,* 36 NY2d, at p 242).

dictionary sense of that term, i.e., to dispense the product for a consideration. The People's argument has a rational basis. The zeal of the People in advancing such argument emanates from a keen perception of the insidious danger posed to society by the seller of narcotics.

Accordingly, the judgment, Supreme Court, New York County (DENZER, J.), rendered May 25, 1978, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree should be affirmed.

SANDLER, J. (concurring). The issue presented by the introduction in evidence of the $1,111 reportedly found on the defendant's person seems to me very close.

Indisputably the testimony suggested, and was intended to suggest, that the money represented, in part at least, the proceeds of previous sales of cocaine, crimes not charged in the indictment. On the other hand, there is obvious force in the District Attorney's contention that the possession of so large a sum of money by the defendant under the circumstances described was relevant to the issue of defendant's intent to sell the cocaine he allegedly possessed.

In *People v Cook* (42 NY2d 204, 208) the Court of Appeals set forth the controlling principles as follows: "It is axiomatic that evidence of uncharged crimes may be introduced only when the testimony is relevant and necessary to the prosecution's case *(People v Molineux,* 168 NY 264; see *People v Stanard,* 32 NY2d 143). Moreover, in determining the admissibility of such evidence, a balance must be struck between the probative value of the testimony in connection with the crimes charged and the danger of undue prejudice to the defendant *(People v Schwartzman,* 24 NY2d 241, 247)."

The result indicated by the mandated balancing test seems to me far from clear. Although I think the trial court could well have resolved the issue here differently, I am inclined to the view that the determination to admit the testimony, with appropriate limiting instructions, was within the permissible area of the trial court's discretion.

Let me add that this case does not seem to me distinguishable in any meaningful way from *People v Lizzarra* (70 AD2d 572). I now think that the decision in *Lizzarra,* in which I participated, was probably erroneous.

MURPHY, P. J. (dissenting). Police Officer Anderson testified,

without any objection from defense counsel, that he had removed $1,111 in cash from defendant's pocket. In his summation, the prosecutor rhetorically asked what the defendant, a grocery clerk, would be doing with that sum of money in his pocket. The prosecutor did not specifically comment upon the alleged relationship between the cash and the crime of criminal possession of a controlled substance in the third degree (Penal Law, § 220.16, subd 1). He left it for the jury to make that determination. Again, defense counsel failed to object.

In the charge, the trial court merely reiterated the prosecutor's contention that the cash was one indication of defendant's "intent to sell" under subdivision 1 of section 220.16 of the Penal Law. Without any cautionary instruction, the jury was permitted to draw whatever inference it wished as to the source of the cash and its connection with defendant's "intent to sell". No exception was taken to this portion of the charge.

The overriding question presented is whether Anderson's testimony as to the cash should have been admitted in evidence and considered by the jury in reaching their verdict. Evidence is relevant if it is legally probative of some matter to be proved (People v Galletti, 55 AD2d 154, 156). The cash found in the defendant's pocket is not relevant to the issue of "intent to sell" or any other issue raised upon appeal (People v Lizzarra, 70 AD2d 572).

There is no proof nor even a suggestion in this record that the defendant received any cash for his involvement in the subject transaction. Thus, it is clear that the prosecution introduced evidence of the cash in the hope that the jury would conclude that it represented the proceeds of prior drug sales made by the defendant. Therefore, the admission of this proof impermissibly allowed the jury to speculate on the defendant's involvement in uncharged crimes and to find him guilty in this case on the basis of those uncharged crimes (People v Jones, 62 AD2d 356). Absent other proof as to the defendant's prior criminal activity in the sale of narcotics, his possession of cash was a lawful act that did not signal criminal intent.

As was mentioned above, defense counsel did not take any objection or exception to this matter. Nonetheless, this pervasive error was so prejudicial that the judgment of conviction should be reversed in the interest of justice (CPL 470.15, subd 6, par [a]; cf. People v Walker, 59 AD2d 666). The jury was presented with conflicting testimony as to whether or not the

defendant had physical possession of the cocaine. Hence, even though the jury chose to believe Officer Anderson's testimony rather than that of the defendant, the evidence against the defendant was not "overwhelming" in any sense of the word *(People v Crimmins,* 36 NY2d 230, 241). Moreover, in deciding whose testimony to credit, the jury may have been unduly swayed by the impermissible references to the cash found in the defendant's pocket *(People v Sossa,* 70 AD2d 814).

Accordingly, the judgment, Supreme Court, New York County (DENZER, J.), rendered May 25, 1978, convicting the defendant, after a jury trial, of criminal possession of a controlled substance in the third and fifth degrees, should be reversed, on the law and as a matter of discretion in the interest of justice, and the matter should be remanded for a new trial on both counts.

LYNCH, J., concurs with LUPIANO, J.; KUPFERMAN, J., concurs in result; SANDLER, J., concurs in opinion; MURPHY, P. J., dissents in opinion.

Judgment, Supreme Court, New York County, rendered on May 25, 1978, affirmed.