■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KENNETH WILLIAMS, Appellant. — Judgment, Supreme Court, Bronx County (Silbermann, J., at hearing, trial, and sentence), rendered August 6, 1979, convicting defendant

after a jury trial of robbery in the second degree and sentencing him as a predicate felon to an indeterminate term of 7½ to 15 years, affirmed. We agree with the facts stated in the dissenting opinion and would only add that defendant sought and was granted a *Huntley* hearing to challenge the admissibility of the statements he made to the police after his arrest. The statements were held admissible and the defendant does not contest this ruling on appeal. We also agree with the conclusion of the dissent that the hearing court either abused its discretion, or exercised none at all, in its determination of the *Sandoval* motion. But every error in a *Sandoval* ruling does not warrant a reversal *(People v Davis,* 63 AD2d 948). Unlike the dissent, we find that defendant has not been prejudiced. We find also that defendant has not challenged the substance of the evidence upon which the jury concluded that he was guilty of robbery in the second degree. For those reasons we affirm the conviction. The dissent has pointed out that, among the 28 or so convictions on defendant's record, there were some upon which cross-examination should not have been permitted. But it does not follow that solely because it was permitted we must grant credence to defendant's contention that but for this error he would have testified on his own behalf. There are a number of convictions on defendant's record upon which it would have been proper to have permitted cross-examination, and for this reason it does not appear to us that defendant would have taken the stand under any circumstances (see *People v Shields,* 58 AD2d 94, affd 46 NY2d 764; *People v Daniels,* 77 AD2d 745, 746). This conclusion is bolstered by the lack of any substantive contradiction by defendant of complainant's testimony in defendant's admissions to the police or to complainant herself. The latter never stated that defendant had exhibited a gun in this robbery. She testified that he had threatened her by telling her that he had a gun and warning her that she would be harmed if she did not co-operate. Thus defendant's claim that he did not use a gun, or that he did not have a gun, or that he was not a violent type, or that he conned the complainant falls short of exculpating him of the charge of which he has been convicted. There is nothing from which we can conclude, nor does defendant suggest, that his testimony, had he taken the stand, would have varied from his pretrial admissions. The contention that defendant's sentence is excessive is strikingly lacking in merit in light of his record of 36 arrests and 28 convictions. Concur — Birns, J.P., Ross and Lynch, JJ.

Carro and Fein, JJ., dissent in a memorandum by Fein, J., as follows: Defendant was convicted of robbery in the second degree and sentenced as a predicate felon to a term of 7½ to 15 years. The issue on this appeal is whether the trial court's ruling on defendant's *Sandoval* motion *(People v Sandoval,* 34 NY2d 371) was such an abuse of discretion as to deny defendant a fair trial. The complainant, Patricia Lang (Lang), testified that at approximately 3:00 P.M. on August 6, 1978, while she was walking on Fordham Road in The Bronx, she was approached by defendant who claimed he had just arrived in New York from Haiti and was looking for a certain hotel. They conversed for approximately 20 minutes until defendant stopped to talk to a man who was walking down the street. Lang continued walking. Suddenly defendant and the other man stopped her. Defendant asked Lang what was in her wallet. He threatened her, telling her he had a gun. He took $40 out of her wallet. He further demanded that she accompany him and his companion to a nearby store, warning her that if she did not co-operate she would be harmed. In the store defendant picked out a TV set which he required Lang to pay for with her credit card. Once outside the store, defendant took two rings from Lang worth approximately $500 and then took off in a taxicab. In late December, Lang saw defendant on Fordham Road. She hailed a passing police car and told the story to Officer Rotger who arrested defendant and took him and Lang to the

precinct. After the officer gave defendant his *Miranda* warnings, defendant said: "I took the T.V. and I took her jewelry and money but I did not use a gun. I did not have a gun." The officer testified that when he arrested defendant, defendant was unarmed. However, defendant was carrying a stack of play money with a real $10 bill on top and two handkerchiefs, one of which contained a bundle of newspaper strips. While they were at the precinct in the presence of the officer, defendant said to Lang: "I know that you are mad with me and I didn't have a gun and why don't you tell them that because I have your rings and they are in the pawnshop and I will get them back for you." Subsequently, the defendant told another officer that he had "hustled" Lang, that he was a "con man", not violent, and did not use a weapon to commit the robbery. Defendant did not testify on the trial nor did he offer any evidence on his behalf. He contends he did not testify because of the court's erroneous *Sandoval* ruling. *Sandoval* (34 NY2d 371, *supra*) and other controlling cases require that a balance be struck between the probative worth of evidence of prior specific criminal, vicious or immoral acts on the issue of defendant's credibility on the one hand, and on the other the risk of unfair prejudice to the defendant measured both by the impact of such evidence, if it is admitted after his testimony, and the effects its probable introduction may have in discouraging him from taking the stand on his own behalf *(People v Sandoval, supra; People v Schwartzman,* 24 NY2d 241, cert den 396 US 846; *People v Davis,* 44 NY2d 269). Although the balancing of these interests is primarily a matter of discretion for the trial court *(People v Shields,* 46 NY2d 764, 765), the exercise of such discretion is reviewable *(People v Pollock,* 50 NY2d 547; *People v Shields, supra; People v Davis, supra).* The procedure followed by the trial court here indicates either that no discretion was exercised or there was an abuse of discretion. Defendant had a record of 35 arrests, covering five pages of his NYSIS record. During the *Sandoval* hearing, the trial court reviewed 23 of appellant's prior convictions, covering an 11-year period. During the sentencing proceedings, it referred to 36 arrests and 28 convictions. Although there is some confusion as to the number of arrests and convictions and their nature, we need only consider the 23 upon which the Trial Judge ruled, at the instance of the District Attorney. The court concluded that defendant could be cross-examined on 20 of these convictions and on 2 as to the facts:

> "5 for petit larceny
> 1 Y/O conviction, allowed as to the facts
> 1 for possession of a weapon
> 1 armed robbery (the only felony conviction)
> 1 for larceny by trick
> 6 for fraud
> 3 for grand larceny
> 1 for grand larceny, possession of stolen property and fraud
> 1 for fraud and possession of burglars tools
> 1 for sexual abuse
> 1 for grand larceny, allowed as to the facts".

Plainly defendant was no paragon of virtue. His record spanned a period of 11 years, from 1967 to 1978. The testimony as to so many prior convictions would almost inevitably have a disproportionate and improper impact on the jury. The apprehension of its introduction undoubtedly and undesirably deterred the defendant from taking the stand and thus denied the jury what may have been significant material evidence on the only issue in the case, as to which there were only two witnesses — victim and the defendant. The use of such a number of convictions could have "no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed

the crime charged" *(People v Schwartzman,* 24 NY2d 241, 247, *supra).* The court's failure to balance competing interests is evident from its lack of concern as to the facts involved in the prior convictions. Thus the 1971 conviction arising out of a charge of armed robbery, as well as the 1971 weapons conviction were extremely prejudicial due to their similarity to the crime charged (see *People v Carmack,* 44 NY2d 706; *People v Dickman,* 42 NY2d 294). Of course, similarity to the crime charged does not absolutely bar use of prior convictions, but it is an element to be considered *(People v Rahman,* 62 AD2d 968, affd 46 NY2d 882). It may very well be that the mass admission of evidence of defendant's prior convictions fits within the *Sandoval* test that evidence of "calculated violence or of specified vicious or immoral acts" may reveal the "willingness or disposition" of defendant to put his own interests over those of society and may "suggest his readiness to do so again on the witness stand" *(People v Sandoval,* 34 NY2d 371, 377, *supra).* However, as *Sandoval* goes on to emphasize, serious consideration must be given to whether the record of prior criminality will be used to convict the defendant because he is a bad man and not because he committed the crime charged. There must be a "sensitive, informed reconciliation of the interests of the People and the rights of the defendant" *(People v Sandoval, supra,* at p 375). The record is not clear as to what dispositions had been made in defendant's prior cases. The trial court ruled as to 20 that the convictions could be used and as to the other 2 that the underlying facts could be used to cross-examine defendant. If there is such a characteristic as a propensity for criminality and specifically for the particular type of crime with which the defendant was charged, defendant's record indicates that he fits the model. This is the precise area of danger of abuse of discretion. If the sole purpose for which prior convictions may be used in a case of this sort is to impeach the credibility of the witness, not to demonstrate his propensity to commit crimes, particularly crimes similar in nature to the one for which he is on trial, the number of prior crimes becomes significant. This is not a case in which the evidence was admissible to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing more than one crime and more than one person, or (5) identity *(People v Molineux,* 168 NY 264; *People v Moran,* 246 NY 100, 106). In such cases it may well be that a large number of prior convictions is properly admissible. Credibility is another matter. I do not suggest that an arbitrary limit can be set on the number of prior convictions which may be used to test credibility. I conclude only that 20 or 22 are far too many for this purpose. It is obvious that testimony as to the prior convictions would cause the trial to become a trial of the other cases and defendant's propensities, rather than an exploration into the facts of this case and the issue of credibility. As stated in *People v Davis* (44 NY2d 269, 275-276, *supra):* "As we read the record as a whole, we are compelled to conclude that the court did not exercise the requisite discretion. Its wholesale rejection of defendants' applications was not the result of an assessment of the probative relevancy of each conviction or of its potential for impermissible prejudice, or of whether and to what extent each outweighed the other. It made no effort to distinguish between the two cases. Vocally at least, it gave no thought to the possibility of limiting multiple convictions as an available means to lessen the likelihood that inferences of propensity might outbalance the need to expose lack of veracity. . . Under the circumstances, it cannot be said that the default in exercising discretion did not have an effect disproportionate to its probative worth on the issue of credibility. Nor can we gainsay the assertion that it deterred the defendants from taking the witness stand." There was a plain and manifest danger that defendant would not testify on the basis of the court's ruling and he did not do so. Whatever the merits of Williams' defense, "its chance of success as a

practical matter was reduced to nought by [this] failure to testify. The blanket rejection of [defendant's application] thus had a tendency to impair the fact-finding process" *(People v Davis, supra,* at p 276). It is manifest that the result condemned in *Davis* was the end achieved here. Defendant did not testify. Although we have no way of knowing what his testimony would have been had he taken the stand, we do have his admissions to the police that he obtained the property from Ms. Lang and had "hustled" or "conned" her and did not have a gun. Ms. Lang never saw the alleged gun. The person alleged to have been defendant's accomplice was never apprehended and did not testify. Thus, the sole testimony as to the events themselves was that of Ms. Lang which, had the defendant testified, would have created a one-on-one confrontation. If believed, defendant might have been convicted of a lesser crime. However, by reason of the *Sandoval* ruling, defendant did not take the stand. It is fairly obvious that had he done so, the jury would have concluded that he was an individual with a propensity for fraud and larceny. The jury might very well have convicted upon that ground alone. It has long been the law that such a conviction cannot stand. In *People v Zackowitz* (254 NY 192, 197), Chief Judge Cardozo stated: "Inflexibly the law has set its face against the endeavor to fasten guilt upon him by proof of character or experience predisposing to an act of crime * * * The endeavor has been often made, but always it has failed." It should fail here. The judgment of conviction should be reversed, the sentence vacated and the action remanded for a new trial.