*369 OPINION OF THE COURT
Rose L. Rubin, J.
Each defendant moves pretrial to suppress the tangible evidence. Additionally, defendant William Mercado moves to suppress his statements. A hearing was held on defendants’ pretrial motions at which Police Officer William Gray, of the Port Authority Police Department, was the sole witness to testify. Based upon the credible evidence adduced at the hearing, the court makes the following findings of fact and reaches the following conclusions of law.
FINDINGS OF FACT
On March 4, 1981, Officer Gray, working as a screening officer in the Pan American building at Kennedy Airport, was approached by an unidentified man in business attire, carrying a briefcase. He had exited the men’s public rest room near the screening area to inform the officer that there were two men in one bathroom stall. Officer Gray entered the rest room, where he saw only one stall with a closed door. Underneath the door, he saw one pair of feet pointed toward the commode with the legs at an angle towards the door. As he approached, he heard two low, male voices coming from it. He looked through the space between the door and the door frame and saw defendant Mercado sitting on the flushing unit of the commode with his feet resting on the bowl. Defendant Mercado was himself looking out through the space.
Officer Gray went into the adjoining stall, where, placing one foot on the commode, he jumped up to look into the stall occupied by the defendants. He saw defendant Mercado sitting on the flushing unit of the commode with his feet up on the porcelain section. He saw defendant Jackson standing by the door with his back to it. The officer further observed that defendant Jackson had an open glassine envelope, containing white powder, in his left hand. When Jackson saw the police officer, he threw the envelope and the white powder into the commode. Officer Gray ordered the men out of the stall, and, after defendant Mercado flushed the toilet, both complied. The defendants were under arrest at this point.
*370 Officer Gray told the defendants to place their hands on the rest room wall and they did so. The officer seized from defendant Jackson’s hand a two-inch straw which had a white residue at one end and nasal mucous residue at the other end. While frisking the defendants, the officer felt a large, soft bulge in defendant Mercado’s left jacket pocket. He asked Mercado to empty his pockets. Mercado removed items other than the object which comprised the large, soft bulge. The officer reached into the pocket and recovered a two-inch straw with white residue and 19 glassine envelopes containing a white powder which Officer Gray believed to be heroin.
Officer Gray took the defendants outside the rest room and, while waiting for assistance, correctly recited the Miranda rights from memory to them. Asked if they understood their rights, each defendant replied affirmatively. Omitted from the Miranda rights was the conventional last question embodying an express waiver.
During the ride to the police building at the airport, Officer Gray asked the defendants what kind of drug it was and how much was the weight in each bag. Defendant Mercado replied that they were only nickel bags of cocaine.
At the police building, each defendant availed himself of the opportunity to make a phone call. While Officer Gray was filling out the arrest forms, defendant Mercado.placed a call to someone in Queens from a phone located on Officer Gray’s desk. Officer Gray overheard Mercado say, “The cops got me.” There was a pause, and then defendant Mercado said, “They got all of it”. The Miranda rights were read to the defendants from a printed form at the police station. Mercado refused to make a statement. However, the officer did not remember whether he had administered the second warnings before or after Mercado placed the phone call.
CONCLUSIONS OF LAW
I
The court has been apprised of only two New York cases involving searches conducted in public rest rooms. In People v Milom (75 AD2d 68), an officer looked through an open window of a rest room in a bar and saw a drug *371 transaction in a nonenclosed area of the rest room. The court rejected defendant’s contention that he had been the victim of an illegal search. In People v Anonymous (99 Misc 2d 289), the court denied defendant’s motion to suppress evidence obtained by a State trooper who peered through a window and observed an act of sodomy occurring in front of the urinals of a public rest room. The courts in both People v Milom (supra) and People v Anonymous (supra), recognize that a person in a public rest room may have a reasonable expectation of privacy when he occupies an enclosed toilet stall, but may not reasonably expect privacy when he is in the public areas of the rest room. As expressed in People v Milom (supra, at p 70): “Thus, visual surveillance into an enclosed area, such as a toilet stall in a public rest room, has been held to constitute a search in violation of the Fourth Amendment because such an area, though accessible to the public, is private while it is in use and the temporary occupant may reasonably expect to be free from intrusion (People v Triggs, 8 Cal 3d 884).” This court would add the caveat that the enclosed toilet stall be used for the purpose for which it was intended.
In other jurisdictions cases dealing with governmental intrusions into the stalls of a public rest room (see, e.g., State v Holt, 291 Ore 343; State v Delmondo, 54 Hawaii 552; People v Triggs, 8 Cal 3d 884, supra, disapproved on another point in People v Lilienthal, 22 Cal 3d 891; United States v Smith, 293 A2d 856 [DC CA]; Brown v State, 3 Md App 90), similarly apply the protection of the Fourth Amendment to the privacy expectations of an occupant of a partially or wholly enclosed stall in a public rest room.
It is logical that the occupant of an enclosed stall in a public rest room may reasonably expect to be free of governmental intrusion when one individual alone occupies a stall and uses it for its intended purpose. Visual observations into an enclosed stall in a public rest room can, therefore, under certain circumstances, amount to a search within the meaning of the Fourth Amendment (see People v Triggs, supra; Brown v State, supra). Query: Were defendants’ rights violated in this case?
Officer Gray, in the performance of his police duties, had the obligation to investigate the informant’s complaint. He *372 had the right to enter a public rest room, the situs of the conduct complained of and, once there, he could lawfully perceive anything evident to his senses. Inasmuch as there was an open area at the bottom of the stalls in which he could see a pair of legs, he was observing that which was exposed to the public, from a place where he had a right to be. Accordingly, his observation did not constitute a search within the meaning of the Fourth Amendment (see 1 Ringel, Searches and Seizures, Arrests and Confessions, § 8.2). His search of the stall began when he peered through the space between the door and the door frame. Before he did so, however, he heard the sound of two voices coming from the stall. Thus, Officer Gray knew that there were two men in the stall before he took any action which amounted to a search.
Instructive on this issue are the decisions in State v Delmondo (supra), decided by the Supreme Court of Hawaii, and United States v Smith (supra), decided by the District of Columbia Court of Appeals. Each case deals with the right of the police to intrude into an enclosed stall after making observations from a public area of a rest room that two men occupied the same stall. Both cases held the governmental intrusion to be permissible. In State v Delmondo (supra), the court held that an officer who heard loud conversation about money and prices emanating from a public toilet stall occupied by two persons had probable cause to make a warrantless search which disclosed evidence of a drug transaction. In finding probable cause, the court relied heavily on the fact that the officer had heard the voices “emanating from a toilet stall containing one bowl occupied by two persons” (State v Delmondo, supra, at p 555).
In United States v Smith (supra), the police, while in the public area of a rest room in a bus terminal, noticed two pairs of legs underneath the door of a pay toilet. An officer peered through a slit on the door’s side and saw two men standing there. The police ordered the two men out of the stall. As the occupants emerged, an officer heard a pouch fall to the floor inside the stall. The officer picked up the pouch and found drug paraphernalia in it. The police then arrested the two men. A subsequent search of their persons *373 disclosed additional contraband. The District of Columbia Court of Appeals found that the police had acted reasonably. In the language of that court (United States v Smith, 293 A2d 856, 858, supra):
“In view of the testimony of the officer that they ‘have a lot of burglaries in this area’, that he had made one narcotics arrest in the same rest room and considered it to be a high crime area for burglaries, ‘disorderly sex’ and narcotics, we cannot say it was unreasonable for the officers to conclude that illegal conduct of some sort was in progress. At the least they had ample reason to conclude they were witnessing an improper use of a facility made available to the public for a particular purpose. Two persons standing in a public pay toilet stall cannot reasonably expect to be free from some sort of authoritative intrusion, where the outward appearance they give is that they are cheating the coin mechanism and apparently are using the stall for a purpose other than that for which it was intended * * *
“In the case at bar there was no requirement under the circumstances that the police officer ignore what was there for him to see. His decision to investigate further was not unreasonable in light of his knowledge of past occurrences in that area, nor do we believe the methods he chose to pursue exceeded the bounds of reason.”
This court reaches the same conclusion with respect to the facts before it. The two defendants herein, who occupied one stall in a public rest room and who were engaged in audible conversation, had no reasonable expectation of privacy there. Officer Gray’s investigation and later search was commenced by information imparted by an informant whom he observed face to face. His investigation of the public rest room disclosed the suspicious sound of conversation between two persons emanating from one stall. A public rest room stall affords only limited and easily penetrated privacy. That right to privacy is breached when the stall is used for a purpose or in a manner contrary to its intended use.
Since the visual intrusion of Officer Gray into the stall was made under circumstances which did not violate defendants’ reasonable expectation of privacy, Officer Gray
*374 did not need probable cause to peer through the cracks of the stall and then over its top. Moreover, in the absence of a showing of a reasonable expectation of privacy, the defendants have no standing and are precluded from further challenging the search on Fourth Amendment grounds. (United States v Salvucci, 448 US 83; Rakas v Illinois, 439 US 128; People v McCloud, 81 AD2d 645.)
Additionally, probable causé to search and arrest is made out by the evidence before this court. “Probable cause” does not mean “more likely than not” as though the phrase had some mathematically precise meaning (United States v Melvin, 596 F2d 492). The phrase “reasonable cause” is more properly equated with “probable cause” (see CPL 690.10, 690.35, subd 2, par [b]; People v McRay, 51 NY2d 594; United States v Melvin, supra). As the United States Supreme Court wrote in Brinegar v United States (338 US 160, 175), “ ‘The substance of all the definitions’ of probable cause ‘is a reasonable ground for belief of guilt’ ”. That court later wrote in Zurcher v Stanford Daily (436 US 547, 559): “ ‘[Reasonableness’ is the overriding test of compliance with the Fourth Amendment”. In the case at bar, an officer who had knowledge that two men were occupying a single stall in a public rest room had reason to conclude that illegal conduct of some sort was in progress.
Upon looking over the top of the stall, Officer Gray saw not only a glassine envelope, which has been termed the hallmark of illicit drug trade, but he also saw white powder in the open envelope. It was reasonable for Officer Gray to conclude that the defendants were attempting to conceal their activity since they jointly occupied a single rest room stall. Moreover, when defendant Jackson saw Officer Gray, he threw the envelope into the commode, which defendant Mercado then flushed. Under all of these circumstances, it was reasonable for the officer to conclude that a crime had been committed and that probable cause existed for the arrests.
The search of the defendants’ persons which occurred in the rest room is justifiable as a search incident to a lawful arrest. Accordingly, defendants’ motions to suppress the straws and the glassine envelopes which allegedly contain heroin are denied.
*375 II
Defendant Mercado moves to suppress two statements, the first made in response to Officer Gray’s inquiry in the police car and the second made to an unknown person on the telephone in the police station, which was overheard by the police officer.
In his recital of their Miranda rights at the scene, the police officer omitted the conventional final inquiry asking whether the suspect wished to make a statement without an attorney present now that he had been made aware of his right to remain silent. Thus, neither defendant expressly waived his constitutional right to remain silent. While an express waiver of Miranda rights is not necessary when the defendant otherwise knowingly and voluntarily waives his rights (North Carolina v Butler, 441 US 369; People v Harris, 79 AD2d 615; People v Norris, 75 AD2d 650; People v Ruiz, 34 AD2d 908), there is no evidence here of such a waiver. Officer Gray was, therefore, precluded from questioning the defendants. Even if the question were innocently asked, a question asked by a police officer which he knows, or reasonably should know, is likely to elicit an incriminating response from a suspect, constitutes interrogation within the meaning of Miranda v Arizona (384 US 436; Rhode Island v Innis, 446 US 291). Accordingly, defendant Mercado’s motion to suppress his statement is granted as to his statement made in the police car that “they were only nickel bags of cocaine”.
A different conclusion is reached with reference to the statements which Officer Gray overheard during defendant Mercado’s telephone call at the police station. Incriminating remarks overheard by the police which are not the result of police interrogation and which are made to third parties may be considered to have been “volunteered” especially when the defendant knew or should have known that the police were present. (See 2 Ringel, Searches and Seizures, Arrests and Confessions, § 27.4, subd [a].) People v Grimaldi (52 NY2d 611), relied upon by the defendant, is distinguishable. In that case, the Court of Appeals found that the telephoned statements made by Grimaldi, who was unaware that the police were listening, were the direct result of improper police inducement and improper interro *376 gation. Here, we find no police misconduct. The defendant had been given his Miranda warnings at least once prior to his telephone call. He knew, or should have known, that his conversation from a phone located on Officer Gray’s desk could be overheard by the police. The police officer did not conceal his presence. He sat at his desk and.continued to process the arrest. His overhearing a portion of defendant’s conversation was inadvertent. Notwithstanding, where a suspect makes a phone call to his attorney and that fact is known to the police, that conversation is inadmissible even though inadvertently overheard and in the absence of police misconduct. (People v Harris, 84 AD2d 63.) Here there is no evidence identifying the recipient of defendant’s telephone call.