THE STATE OF OHIO, APPELLEE, *v.*
TANNER, APPELLANT.

(No. 87AP-100—Decided
March 31, 1988.)

*Michael Miller,* prosecuting attorney, and *Alan C. Travis,* for appellee.
*Thomas M. Tyack & Associates* and *Thomas M. Tyack,* for appellant.

BOWMAN, J. On October 21, 1985, Officer James Moss of the Columbus Police Department was working special duty at the Palace Theatre, and during intermission was assigned to work in the men's restroom. The restroom contained eight urinals along a wall and approximately the same number of toilet stalls on the opposite wall. The stalls were separated by partitions and had doors. The clearance between the bottom of the doors and the floor was such that one could see the feet of the occupier of the stall. At the top, the doors and partitions ended short of the ceiling and someone could see over a door or partition if he looked over.

During intermission, Moss entered the crowded restroom and observed a stall where the door was closed. He saw two pairs of legs in the stall standing around and facing the toilet, and the pants of both occupants appeared to be up. In addition, the officer observed that no wheelchair or crutches were in the stall. Moss heard a noise which was similar to "sniff, sniff, which was a snort." Moss then put his hands on top of the door and peeped over where he observed appellant and another male. Appellant had a straw up his nose and was snorting some type of substance, later identified as cocaine, from a plastic bag. Moss pushed in the unlocked door, took appellant into custody and seized some powder and the straw from him.

Appellant was indicted on one count of drug abuse charging him with possession of cocaine, a Schedule II controlled substance. On December 17, 1986, the trial court overruled a pretrial motion to suppress the drugs seized from appellant. Appellant waived trial by jury and on January 27, 1987 he was found guilty.

Appellant now brings this appeal and asserts the following assignment of error:

"The trial court erred in overruling defendant's motion to suppress evidence seized in violation of the defendant's rights under the Fourth Amendment of the United States Constitution and the Constitution of the State of Ohio."

In his assignment of error, appellant alleges that Moss' initial observation of two pairs of legs, both of which were around and facing the toilet, and hearing sniffing sounds, does not rise to the level of probable cause required to conduct a warrantless search.

The Fourth Amendment to the United States Constitution protects all citizens from unreasonable governmental intrusions into legitimate expectations of privacy. It does not protect every subjective expectation of privacy, but only protects those expec-

tations which society recognizes as reasonable. See, *e.g., Oliver* v. *United States* (1984), 466 U.S. 170. Once a particular locale is determined to be one in which an individual has a cognizable expectation of privacy, the invasion of that privacy interest will be a search subject to constitutional protections. However, since the Fourth Amendment only protects against unreasonable searches and seizures, a search may be justified by the existence of probable cause to believe that a crime has occurred, is occurring or is about to occur.

The issue of whether a person has a reasonable expectation of privacy in the place searched was addressed in *Katz* v. *United States* (1967), 389 U.S. 347. In *Katz,* the court stated that what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 351-352. Therefore, a place can be temporarily private where the person who is occupying it expects freedom from intrusion, and where such expectation is deemed reasonable. However, the degree of protection afforded depends on the degree of privacy sought by the individual, and the degree of privacy may be demonstrated in the way in which he acts.

The determination of whether a legitimate expectation of privacy exists must be made on a case-by-case basis considering those circumstances peculiar to the case before the court. There are two elements that must be present to justify the conclusion that a person has a legitimate expectation of privacy. First, the individual "must have a subjective expectation of privacy; and, second, * * * [the] expectation must, as an objective matter, be one that society is prepared to recognize as reasonable." *United States* v. *Brown* (C.A. 6, 1980), 635 F. 2d 1207, 1211.

In justifying a particular intrusion,

a police officer must be able to point to specific facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. The facts must be judged against the objective standard of whether the facts available to the officer at the moment of the search or seizure would warrant a man of reasonable caution in the belief that the action taken was appropriate. *Terry* v. *Ohio* (1968), 392 U.S. 1, 21-22. Probable cause for a search without a warrant exists where facts and circumstances within a police officer's knowledge, for which he had reasonable, trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense was being committed. *Riccardi* v. *Perini* (C.A. 6, 1969), 417 F. 2d 645.

In *United States* v. *Smith* (D.C. App. 1972), 293 A. 2d 856, the court held that it was not unreasonable for police officers to conclude that illegal conduct of some sort was in progress when they observed the legs of two men in a toilet stall. The police officers in question were familiar with past illegal activity in the restroom and had made arrests there in the past. The court stated that at the very least, the police officers had ample reason to conclude they were witnessing an improper use of a facility made available to the public for a particular purpose. The court stated:

"It may be that a person who has entered an enclosed stall located in a public facility with the intent of using it for the purpose for which it was made available is entitled to the modicum of privacy that its design affords and to that extent may invoke the protection of the fourth amendment. But this does not mean that there can never be circumstances under which a police officer may have good cause to investigate what is going on inside. * * *

"* * *

"* * * Two persons standing in a public * * * toilet stall cannot reasonably expect to be free from some sort of authoritative intrusion, where the outward appearance they give is that they * * * apparently are using the stall for a purpose other than that for which it was intended." (Footnotes omitted.) *Id.* at 858.

In *Wylie* v. *State* (1982), 164 Ga. App. 174, 296 S.E. 2d 743, a police officer entered the restroom to use the facility but the single commode stall was occupied. When he noticed two pairs of feet in the stall, the police officer looked through a crack in the door and saw two men ingesting a white powder later identified as cocaine. The court, in holding that the visual intrusion by the police officer was reasonable, admitted that the question was close. The court stated that when two individuals enter the stall, neither of whom appears to be an invalid or handicapped as to require assistance, the immediate surveillance of the stall appeared to pass constitutional muster.

"Whether or not visual inspection of an enclosed area such as this constitutes an unreasonable search depends upon the circumstances of the case. There must be evidence to alert a law enforcement officer to the likelihood of illegal activity, but the evidence need not cross the probable cause threshold where nothing other than visual inspection is made and there is no physical entry." *Id.* at 176, 296 S.E. 2d at 744.

Appellant cites *Buchanan* v. *State* (Tex. Crim. App. 1971), 471 S.W. 2d 401, certiorari denied (1972), 405 U.S. 930; *State* v. *Bryant* (1970), 287 Minn. 205, 177 N.W. 2d 800; and *People* v. *Triggs* (1973), 8 Cal. 3d 884, 106 Cal. Rptr. 408, 506 P. 2d 232, in support of his contention that a citizen is entitled to Fourth Amendment protection when he is in a private stall in a public restroom. *Triggs* was overruled on other grounds in *People* v. *Lilienthal* (1978), 22 Cal. 3d 891, 150 Cal. Rptr. 910, 587 P. 2d 706, but will not be considered. *Buchanan* and *Bryant* are distinguishable from the case at bar and, therefore, are not applicable to the issue presented herein.

In both *Buchanan* and *Bryant*, the defendants were observed because the police were conducting clandestine observations to determine if any criminal activity was occurring in public restrooms. The courts' holdings in each of the cases are directed toward prohibiting police officers from conducting generalized searches looking for *any* kind of criminal activity, as opposed to the officers' observing suspicious behavior. The rationale behind these holdings is that if a police officer waits and observes an area long enough, he will see some type of prohibited act for which he could make an arrest.

In contrast, in *People* v. *Mercado* (1986), 68 N.Y. 2d 874, 508 N.Y. Supp. 2d 419, 501 N.E. 2d 27, certiorari denied (1987), 479 U.S. 1095, a police officer was informed by a restroom patron that two men were in a toilet stall in the restroom. The police officer entered the restroom to investigate and saw a stall door closed with one pair of feet showing. The police officer then heard two voices in the stall, so he investigated and saw two men with a substance later identified as heroin. The court held that the police officer was justified in looking into a toilet stall where it appeared that the facility was not being used for its intended purpose. The court found that the police officer was entitled to apply his experience and senses to ascertain that the two men were using a single toilet stall in a manner that indicated it was not being used for its intended purpose. Based on what he saw and heard, he could reasonably suspect the oc-

cupants were engaged in a drug or sex crime.

Likewise, in this case, Officer Moss was entitled to look into the toilet stall to ascertain whether or not a crime was being committed, and this court finds that he acted properly under the circumstances of this case. Upon observing two pairs of legs in the stall, Moss became immediately suspicious that some sort of illegal activity was occurring. He used his experience and senses to determine that the single stall was not being used for its intended purpose, especially since there was no indication that anyone within the stall was handicapped or needed assistance. When he heard sniffing sounds coming from the stall he was justified in looking over the partition.

This court finds that an individual's subjective expectation of privacy is limited when two people are in a stall designed for use by one person. The two people in the stall cannot reasonably expect to be free from intrusion when the outward appearance they give is that they are using the single stall for a purpose other than for what it was intended. As the court stated in *Mercado, supra:*

"Human imagination might conjure up possible innocent behavior within that toilet stall * * * but that cannot be the test of probable cause justifying an intrusion upon one's privacy interest. Probable cause does not require proof to a mathematical certainty, or proof beyond a reasonable doubt. Based on the articulated, objective facts before Officer Gray, and the reasonable inferences to be drawn therefrom, it was 'more probable than not' that criminal activity was taking place inside that stall * * *. His suspicions heightened by what he saw and heard from afar, the officer was not compelled to turn heel and leave the rest room, but could properly look through the spaces at the sides of the door in an effort to learn what was going on inside. When those observations served only to enhance his suspicion of illicit activity, he properly * * * looked over the partition." *Id.* at 877, 508 N.Y. Supp. at 422, 501 N.E. 2d at 30.

Accordingly, this court finds that appellant's assignment of error is not well-taken and is hereby overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and YOUNG, J., concur.

WHITESIDE, J., concurring. Although I concur in the opinion and judgment, I feel some additional comments concerning the circumstances herein are appropriate, lest one erroneously extend our conclusions concerning public restroom privacy beyond that which we determine.

Here, defendant and his companion could not have expected complete privacy since anyone entering the restroom could view their feet and legs up to the point where the stall door commenced. The top of the door was as low as six feet from the floor according to the testimony. Although the exact distance between the bottom of the door and the floor is not certain, the officer testified it was three feet. Additionally, according to the officer's testimony, anyone entering the restroom could hear the sniffing or snorting sound emanating from the stall. Also, the men did not evince an expectation of privacy since they left the stall door unlocked. One entering a toilet stall only partially enclosed by a door or partition cannot have an expectation of complete privacy, although some degree of privacy may be expected, but, if the door is left unlocked, there is a possibility that someone may

open the door to enter, exposing the occupants of the stall to the view of anyone in the restroom.

Under the circumstances here, the officer obtained sufficient information from observing that which anyone could observe to justify the officer in making further investigation into the nature of the activity he had seen and heard taking place in the public restroom stall. He then "peeped" into the stall by putting his hands on the top of the partition and pulling himself up. There is no indication of his height or how far he "pulled" himself, but there is no suggestion his feet left the floor.

Under these circumstances, the intrusion of the officer was neither unreasonable nor an unwarranted invasion of defendant's privacy, since only limited privacy could be reasonably anticipated.