STATE of Wisconsin, Plaintiff-Respondent,

v.

Kelly L. McCRAY, Defendant-Appellant.

Court of Appeals

*No. 97–2746–CR. Submitted on briefs April 7, 1998.—Decided June 25, 1998.*

(Also reported in 583 N.W.2d 668.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Paul LaZotte* of *Frank J. Remington Center* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen W. Kleinmaier*, assistant attorney general.

Before Eich, C.J., Roggensack and Deininger, JJ.

ROGGENSACK, J. Kelly McCray appeals his conviction for possession of cocaine with intent to deliver, based on the denial of a suppression motion which focused on evidence seized following the execu-

tion of a no-knock warrant at someone else's house. Mc Cray asserts that the factual allegations upon which the warrant was based were insufficient to justify its issuance under recent United States Supreme Court precedent.[1] However, because the evidence established that at the time the warrant was executed McCray was on the premises without permission, we conclude he lacks standing to assert a Fourth Amendment challenge to the search. Therefore, we affirm the circuit court.

## BACKGROUND

On March 8, 1996, a Rock County circuit court judge signed a no-knock warrant to search Ella Hodge's home. The warrant was based on information that Ella's sons, Otis and Terrance Hodges, were dealing drugs out of the house, on the requesting police officer's general experience that drug dealers often arm themselves with weapons and on his assertion that surprise reduces resistance and the chance of injury. At approximately 10:29 a.m. on March 9, 1996, Beloit police officers executed the search warrant by means of a forced entry. Officer John McMahon found McCray lying on a sofa in the basement. He had crack cocaine in a plastic baggie on the sofa, and several other baggies of cocaine were located in the rafters of the basement, about ten feet from McCray.

McCray was charged as a party to the crime of possession of cocaine with intent to deliver, within 1,000 feet of a school, contrary to §§ 939.05, 161.41(1m)(cm)1.,[2] and 161.49(1),[3] STATS. He filed a

---

[1] *Richards v. Wisconsin*, 520 U.S. 385 (1997).

[2] This section was moved to § 961.41(1m)(cm)1., STATS., by 1995 Wis. Act 448, §§ 243 to 266, effective July 9, 1996.

motion to suppress the evidence seized from the Hodges' home, contending that the entry was illegal, based on constitutional infirmities in the search warrant. The circuit court denied the motion without taking evidence, and the case proceeded to trial.

Ella Hodges testified that she was the owner of the house, and that she had neither known about nor authorized McCray's presence in her basement. Her son, Otis, testified that he met McCray for the first time on the evening of March 8, 1996, when McCray came to the door with a friend and asked to use the phone. After making his phone call, McCray asked to stay in the basement until his ride arrived. Otis agreed McCray could wait for his ride in the basement, but specifically told him, "if it gets too late in the night, I'm going to have to tell you to leave." He said he never actually asked McCray to leave because he fell asleep himself. McCray also took the stand. He testified that he had not come to the Hodges' house with Michael Pittman until approximately 6:30 a.m. on March 9, 1996. He said that Pittman told him to go down to the basement, and that he had fallen asleep there.

McCray was convicted and sentenced to an indeterminate term in the Wisconsin State Prisons, not to exceed three years. The circuit court, finding that the Hodges did not want or invite McCray to stay overnight, denied McCray's motion for postconviction relief on the Fourth Amendment issue. McCray appeals.

---

[3] This section was moved to § 961.49(1), STATS., by 1995 Wis. Act 448, §§ 289 to 290, effective July 9, 1996.

## DISCUSSION

**Standard of Review.**

■

When we review the denial of a motion to suppress evidence obtained as a result of an allegedly unlawful search, we will uphold the circuit court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *State v. Whitrock*, 161 Wis. 2d 960, 973, 468 N.W.2d 696, 701 (1991). However, this court will independently determine whether the facts underlying a particular search and seizure satisfy constitutional demands. *Id.*

**Standing.**

The Fourth Amendment to the United States Constitution and art. I, § 11 of the Wisconsin Constitution prohibit unreasonable searches and seizures. *State v. Drogsvold*, 104 Wis. 2d 247, 264, 311 N.W.2d 243, 251 (Ct. App. 1981). Due to the similarity of these provisions, Wisconsin courts look to the United States Supreme Court's interpretation of the Fourth Amendment for guidance in construing the state constitution. *State v. Roberts*, 196 Wis. 2d 445, 452–53, 538 N.W.2d 825, 828 (Ct. App. 1995).

■

"At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Payton v. New York*, 445 U.S. 573, 589–90 (1980) (citation omitted). However, "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Therefore, one may have Fourth Amendment protection outside of

709

one's home. *See, e.g., Katz,* 389 U.S. at 352–53 (holding that one may have Fourth Amendment protection for oral statements made in a public phone booth when one has closed the door). The test for determining whether an individual has standing to raise a Fourth Amendment issue examines "whether the person who claims the protection of the [Fourth] Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson,* 495 U.S. 91, 95 (1990) (citation omitted). A legitimate expectation of privacy is one which "society is prepared to recognize as reasonable." *Id.* at 95–96 (citations omitted). The proponent of a motion to suppress bears the burden of establishing the reasonableness of the alleged privacy expectation by a preponderance of the credible evidence. *Whitrock,* 161 Wis. 2d at 972, 468 N.W.2d at 701.

In *Olson,* the United States Supreme Court determined that a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Olson,* 495 U.S. at 96–97. The Court reasoned that an overnight guest "seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside," during the vulnerable period while the guest sleeps. *Id.* at 99.

Under significantly different facts, the Wisconsin Supreme Court in *Whitrock,* determined that a defendant who had been staying in an apartment at the invitation of one who was occupying the premises without the landlord's authorization did *not* have a reasonable expectation of privacy in the apartment. The *Whitrock* court considered the totality of the circumstances surrounding Whitrock's presence on the

premises and distinguished *Olson* because in *Olson* the overnight guest's expectation of privacy was derived from the host, who had lawful possession. Society recognizes a guest's expectation of privacy when he is on the premises under those conditions. However, when the host has no lawful right to be on the premises, he, himself, has no Fourth Amendment expectation of privacy; and therefore, he cannot be the foundation for a Fourth Amendment right for his guest. *See Whitrock*, 161 Wis. 2d at 979–80, 468 N.W.2d at 704–05 (citing *Olson*, 495 U.S. at 98–101).

As we examine McCray's constitutional challenge, we are focused by the totality of the circumstances analysis used by the court in *Whitrock*. In that regard it considered:

> (1) whether the defendant had a property interest in the premises, (2) whether he was legitimately (lawfully) on the premises; (3) whether he had complete dominion and control and the right to exclude others; (4) whether he took precautions customarily taken by those seeking privacy; (5) whether he put the property to some private use; and (6) whether the claim of privacy is consistent with historical notions of privacy.

*Id.* at 974, 468 N.W.2d at 702.

Our consideration of McCray's suppression motion requires a review of the facts found by the circuit court. It found that neither Ella nor Otis had invited McCray to stay overnight in the basement, and that McCray's testimony that he did not arrive at the house until the following morning was simply not credible. These findings were based on the circuit court's observation of Ella's, Otis's and McCray's testimony. The arresting

officers said they observed cocaine on the sofa where McCray had been sleeping and in the nearby rafters. They also retrieved $255 from under the sole of his shoe. One officer testified that in his experience, drug dealers do not let a quantity of controlled substances such as that found in the rafters out of their immediate vicinity, and that it would be unusual to leave a stranger alone in a room where drugs were hidden, for fear they would be stolen. The officer also stated that it is common for drug dealers from Illinois to come to Beloit, because they can charge two to three times the price for their cocaine in Beloit as in Chicago, and that it is common for people to allow drug dealers to use their houses as store fronts in exchange for money or drugs. Otis also testified that during the evening McCray answered a knock at the door and went outside to talk to two women whom Otis knew to be drug users from his neighborhood. The court found that McCray's actual purpose for being on the premises was to sell drugs and that he was to have left as soon as that business was concluded. Therefore, we conclude the record supports the circuit court's factual findings, and we will not disturb them.

██

In regard to the constitutional issue: whether one who was permitted to use the basement of a house while waiting to sell drugs, but who had exceeded his authorized stay at the time of the police search, has demonstrated a reasonable expectation of privacy in the house sufficient to establish standing to challenge the search under the Fourth Amendment. We conclude he does not.

McCray had no property interest in the Hodges' house. And, although he may have legitimately entered the premises the night before the search, he did not

have permission to remain in the basement until 10:30 the morning of his arrest. Therefore, he cannot claim to have been legitimately on the premises at that time. The homeowner, Ella Hodges, had not relinquished the dominion and control of the house to McCray. That Mc Cray lacked authority to admit or exclude people from the house was demonstrated by his going outside to speak with the two women who knocked at the door, rather than inviting them into the house. Although hiding drugs in the rafters of the basement could be considered a private use of the premises, the record is devoid of evidence showing he had permission from the owner to do so. McCray's use of the premises was not to seek privacy, but rather to access the drug-buying public of Beloit. Therefore, we conclude McCray has failed to establish, under the totality of the circumstances, that he had any reasonable expectation of privacy in the basement of the house in which he had remained past the period of time granted by his host. We affirm the circuit court's conclusion that McCray lacked standing to raise a Fourth Amendment challenge to the search.

## CONCLUSION

While an overnight guest may have an expectation of privacy in the host's premises, in this case the homeowner's testimony established that McCray was not such a guest. Therefore, McCray lacked standing to assert a Fourth Amendment challenge to the search of the homeowner's basement.

*By the Court.*—Judgment affirmed.