STATE of Wisconsin, Plaintiff-Appellant,

v.

Juan M. ORTA, Defendant-Respondent.

Court of Appeals

*No. 02–1008–CR. Oral argument February 19, 2003.—Decided April 23, 2003.*

2003 WI App 93

(Also reported in 663 N.W.2d 358.)

On behalf of the Plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, assistant attorney general, and *Kathleen M. Ptacek*, assistant attorney general, and oral argument by *Kathleen M. Ptacek*.

On behalf of the defendant-respondent, the cause was submitted on the brief and oral argument of *Glenn L. Cushing*, of Madison.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. NETTESHEIM, P.J.   The State appeals from a trial court order granting Juan M. Orta's motion to suppress evidence of drug possession. The court ruled that Orta had a legitimate expectation of privacy in the public rest room stall where he engaged in a drug transaction with another individual and therefore Orta had standing to challenge the search.

¶ 2.   We reverse the trial court's order. We conclude that an individual who occupies a public restroom stall does not have a reasonable expectation of privacy when he or she occupies it with another individual, leaves the door slightly ajar and unlatched, and evinces no indication that the stall is being used for its intended purpose.

## *FACTS*

¶ 3.   At the hearing on Orta's motion to suppress, Officer Terrance Jones of the Racine police department testified to the following facts. On August 11, 2001, Jones was working as a private security guard at a dance at Memorial Hall in the city of Racine. At some

point during the evening, Jones entered the men's restroom and observed two individuals in the farthest of four restroom stalls. Jones could see the top of their heads and their feet and determined that the individuals were adults. Although Jones could detect a whispered conversation, he could not hear what the individuals were saying.

¶ 4. Jones approached the stall and, from the positioning of the feet, determined that the individuals were facing each other with their feet perpendicular to the toilet. The door to the stall was cracked open and not locked, although Jones could not see into the stall. Jones knocked on the door and slowly pushed it open. The individuals moved back and Jones asked them what was going on. The man in the stall with Orta immediately took a clear baggie containing white powder that was in his hand and threw it in the toilet. Jones immediately ordered the individuals out of the stall, placed them in handcuffs and requested their permission to search them. After receiving consent, Jones searched Orta and discovered a baggie containing what was later determined to be cocaine.

¶ 5. At the conclusion of the hearing on Orta's motion to suppress, the trial court ruled that Orta had a legitimate expectation of privacy in the restroom stall and therefore had standing to challenge the search. Since Jones did not have probable cause or reasonable suspicion to believe that a crime had been or was being committed when he opened the door of the stall, the trial court suppressed the evidence. The State appeals.[1]

---

[1] Pursuant to Wis. Stat. § 971.31(10) (2001–02), the State is entitled to appeal the trial court's order as a matter of right even though the order is nonfinal. All references to the Wisconsin Statutes are to the 2001–02 version.

## DISCUSSION

### 1. Scope of the Reviewable Evidence

¶ 6.   Before we address the merits of the issue, we set out the scope of the evidence we are permitted to consider on the question. It is self-evident that in a conventional motion to suppress setting where standing is not at issue, a court is not permitted to consider the fruits of the search to justify the intrusion. However, the law is otherwise where standing is at issue. In *Minnesota v. Carter*, 525 U.S. 83 (1998), the respondents gave cocaine to the owner of an apartment in exchange for the use of the apartment as a site for bagging cocaine. *Id.* at 85–86. In determining whether the respondents had standing to challenge a search of the apartment, the United States Supreme Court referred to the "commercial nature of the transaction," *id.* at 91, and further stated:

> Respondents here were obviously not overnight guests, but were essentially present for a business transaction and were only in the home a matter of hours. There is no suggestion that they had a previous relationship with [the apartment resident], or that there was any other purpose to their visit . . . . While the apartment was a dwelling place for [its resident], it was for these respondents simply a place to do business.

*Id.* at 90 (footnote omitted).

¶ 7.   We followed this same approach in *State v. Trecroci*, 2001 WI App 126, 246 Wis. 2d 261, 630 N.W.2d 555, *review denied*, 2001 WI 117, 247 Wis. 2d 1033, 635 N.W.2d 782 (Wis. Sept. 19, 2001) (No. 00–1081–CR). In assessing whether the defendants had established a

reasonable expectation of privacy, we noted that the defendants had "rented the attic space . . . for the principal purpose of conducting their *criminal enterprise."* *Id.*, ¶ 42 (emphasis added). It is thus evident that a court may look to facts discovered after the intrusion to determine if a defendant has a reasonable expectation of privacy to confer standing to challenge a search.

¶ 8. Orta argues that the consideration of after-discovered facts concerning the defendant's actual use of the facilities would render it impossible for any criminal defendant to have a legitimate expectation of privacy "because every criminal defendant ever caught by police, prosecuted by the state, and litigating a suppression motion was, by definition, not using the stall for its intended purpose." However, our decision in *Trecroci* squarely refutes this argument. There, although acknowledging the criminal enterprise of the defendants, we nonetheless concluded that they had succeeded in establishing a legitimate expectation of privacy. *Id.*, ¶¶ 42–43.

¶ 9. Therefore, in assessing Orta's standing claim, we are entitled to consider the observations and discoveries made by Jones when he entered the restroom stall.

## 2. Standard of Review

¶ 10. When reviewing a trial court's ruling on a motion to suppress evidence on Fourth Amendment grounds, we will uphold the trial court's factual findings unless clearly erroneous. *State v. Eskridge*, 2002 WI App 158, ¶ 9, 256 Wis. 2d 314, 647 N.W.2d 434, *review denied,* 2002 WI 121, 257 Wis. 2d 120, 653 N.W.2d 891 (Wis. Sept. 26, 2002) (No. 01–2720–CR). Whether a

defendant has standing to raise a Fourth Amendment claim also presents a question of law. *Id*.

### 3. Standing/Reasonable Expectation of Privacy

¶ 11.  When assessing a defendant's standing to challenge a search under the Fourth Amendment, the critical inquiry is "whether the person . . . has a legitimate expectation of privacy in the invaded place." *Trecroci*, 246 Wis. 2d 261, ¶ 26 (citation omitted). A defendant bears the burden of establishing his or her reasonable expectation of privacy by a preponderance of the evidence. *State v. Whitrock*, 161 Wis. 2d 960, 972, 468 N.W.2d 696 (1991). Whether a person has a reasonable expectation of privacy depends on (1) whether the individual has exhibited an actual, subjective expectation of privacy in the area inspected and in the item seized; and (2) whether society is willing to recognize such an expectation of privacy as reasonable. *Trecroci*, 246 Wis. 2d 261, ¶ 35.

¶ 12.  With respect to the first prong, we must determine whether the defendant's evidence "stack[s] up to proof by a preponderance of the evidence that he had a subjective expectation of privacy." *See Eskridge*, 256 Wis. 2d 314, ¶ 13. *Trecroci* provides guidance. There, we concluded that the defendants exhibited a subjective expectation of privacy in the attic area of their apartment dwelling because the defendants so testified they had equipped the doorway leading to the entrance to the stairway with a deadbolt lock, and there was no suggestion that third parties had unfettered access to the stairway. *Trecroci*, 246 Wis. 2d 261, ¶ 35.

¶ 13. Here, although Orta did not testify, we will assume that he subjectively expected privacy while he and his companion were in the restroom stall. But the law requires more than simple expectation of privacy. In addition, the law requires that such expectation be *exhibited* in some fashion. *Id.* The evidence in this case does not demonstrate that Orta exhibited an expectation of privacy. Orta conducted his criminal activity in the restroom stall of a public building. Although a public restroom stall carries notions of privacy, the fact remains that any member of the public might try to enter the stall. In addition, Orta failed to latch or lock the door of the stall[2] and also failed to assure that the door was fully closed. Finally, Orta and his companion positioned themselves in the stall in such a manner that an observer such as Jones would conclude that the stall was not being used as intended—a matter confirmed by Jones' later observations when he entered the stall. Under these circumstances, we conclude that Orta did not demonstrate a subjective expectation of privacy by a preponderance of the evidence. *See Eskridge*, 256 Wis. 2d 314, ¶ 13.

¶ 14. Although unnecessary, we choose to also address the objective prong of a standing analysis. *See Trecroci*, 246 Wis. 2d 261, ¶ 36. On this element of the test, we look to the following factors:

---

[2] We acknowledge Orta's argument that there is no evidence that the door in fact had a lock. However, it was Orta's burden to demonstrate that it did not. *See State v. Whitrock*, 161 Wis. 2d 960, 972, 468 N.W.2d 696 (1991). Regardless, Jones testified that the door was not fully closed, it was "cracked, it wasn't closed all the way."

1. Whether the person had a property interest in the premises;

2. Whether the person was legitimately on the premises;

3. Whether the person had complete dominion and control and the right to exclude others;

4. Whether the person took precautions customarily taken by those seeking privacy;

5. Whether the person put the property to some private use; and

6. Whether the claim of privacy is consistent with historical notions of privacy.

*Id.* This list of factors is neither controlling nor exclusive; rather, the totality of the circumstances is the controlling standard. *State v. Thompson*, 222 Wis. 2d 179, 186–87, 585 N.W.2d 905 (Ct. App. 1998). A determination as to the reasonableness of a person's expectation of privacy depends on the particular facts of a case. *Trecroci*, 246 Wis. 2d 261, ¶ 33.

¶ 15.  As to the first and second prongs, it is undisputed that although Orta was legitimately on the premises, he did not have a property interest in the restroom stall in the public facilities at Memorial Hall. However, Orta's lack of property interest is not dispositive. "Capacity to claim the protection of the fourth amendment" does not depend "upon a property right in the invaded place." *Whitrock*, 161 Wis. 2d at 973 (citation omitted). What a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351 (1967). Moreover, while there is no

Wisconsin case directly on point, courts in other jurisdictions routinely apply the protections of the Fourth Amendment to the privacy expectations of an occupant of a partially or wholly enclosed stall in a public restroom. *See State v. Tanner*, 537 N.E.2d 702, 705 (Ohio Ct. App. 1988); *People v. Mercado*, 446 N.Y.S.2d 980, 983 (N.Y. Sup. Ct. 1982); *State v. Biggar*, 716 P.2d 493, 495 (Haw. 1986). These two factors favor Orta.

¶ 16.　Under the third factor, we consider whether Orta had complete dominion and control of the restroom stall and the right to exclude others. As our previous discussion regarding Orta's subjective expectation of privacy reveals, Orta could have taken the usual and customary steps to assure privacy in the restroom stall by locking or latching the stall door or, at a minimum, assuring that the door was fully closed. However, he did not. Therefore, while Orta arguably had the right to exclude others, he did not take the necessary, common and available steps to achieve *complete* dominion and control over the stall in order to exercise that privacy right. This factor favors the State.

¶ 17.　Next we examine the fourth and sixth prongs: whether Orta took precautions customarily taken by those seeking privacy and whether his claim of privacy is consistent with historical notions of privacy. Orta cites to *Biggar*, 716 P.2d 493; *Brown v. State*, 238 A.2d 147 (Md. Ct. Spec. App. 1968); and *Ward v. State*, 636 So. 2d 68 (Fla. Dist. Ct. App. 1994), for the proposition that despite his failure to latch the door, he still took precautions for privacy and that his claim for privacy is one that society would recognize as reasonable. However, all three cases differ factually from this one. The defendants in these three cases were each the *sole occupants* of a restroom stall and, therefore, the cases provide little guidance on whether, and under

what circumstances, multiple occupancy of a public restroom stall erodes the reasonable expectation of privacy otherwise afforded.[3] The double occupancy of

[3] In *State v. Biggar*, 716 P.2d 493, 494 (Haw. 1986), the defendant indicated to the officer that he was entering the stall to use it for its intended purpose. He then entered the stall and shut the door, which "did not close completely." *Id.* The officer went into an adjacent stall and looked over the partition into the defendant's stall. *Id.* The officer observed the defendant withdrawing his hand from the disposable seat cover dispenser and subsequently found cocaine hidden there. *Id.* In reversing the defendant's conviction, the court stated, "[W]e think it is beyond dispute that an expectation of privacy in a closed toilet stall is one that society would recognize as objectively reasonable." *Id.* at 495.

*Brown v. State*, 238 A.2d 147 (Md. Ct. Spec. App. 1968), also involved a single individual in a stall. There, the court concluded:

> [A] person who enters an enclosed stall in a public toilet, with the door closed behind him, is entitled, at least, to the modicum of privacy its design affords, certainly to the extent that he will not be joined by an uninvited guest or spied upon by probing eyes in a head physically intruding into the area. No less than a person in a business office, in a friend's apartment, or in a taxicab, a person in an enclosed stall in a public toilet may rely upon the protection of the Fourth Amendment. The nature of the place, the type of criminal activities that can and do occur in it, the ready availability therein of a receptacle for disposing of incriminating evidence and the right of the public to expect that police will put a stop to its use as a resort to crime are not sufficient to permit the search under the circumstances here present.

*Id.* at 149–50 (citations omitted).

Finally, in *Ward v. State*, 636 So. 2d 68 (Fla. Dist. Ct. App. 1994), an officer observed the defendant in a restroom stall through a hole in the wall between the stalls and through a crack between the door of the stall and its frame. *Id.* at 69, 70 n.5. Although there was no latch on the rest room door, the

the stall in this case played a large part in determining Jones' actions. We therefore turn to cases concerning multiple occupancy, the majority of which limit the expectation of privacy in a restroom stall occupied by more than one person. *See, e.g, State v. Mudloff*, 36 P.3d 326 (Kan. Ct. App. 2001); *People v. Mercado*, 446 N.Y.S.2d 980 (N.Y. Sup. Ct. 1982); *State v. Tanner*, 537 N.E.2d 702 (Ohio Ct. App. 1988).[4]

¶ 18.   The most recent case addressing this issue is *Mudloff*. There the defendant occupied a stall with another individual and had an audible conversation with that person indicating to a passerby there was activity occurring not in accordance with the stall's intended use. *Mudloff*, 36 P.3d at 327. The officer

circuit court found that the "design of the toilet stalls was sufficient to provide the occupant, after closing the doors, with a degree of privacy" and that the "privacy was invaded by [the officer] looking through the crack in the door in a 'peeping Tom fashion.' " *Id*. at 70.

[4] *See also Wylie v. State*, 296 S.E.2d 743, 743–44 (Ga. Ct. App. 1982) (the defendant did not have a reasonable expectation of privacy when he occupied a single commode stall with another individual with their feet facing each other; when two individuals enter the stall, neither of whom appears to be an invalid or handicapped as to require assistance, the immediate surveillance of the stall, without the delay incident to a warrant, appears to pass constitutional muster); *Barron v. State*, 823 P.2d 17, 20 (Alaska Ct. App. 1992) ("[T]he cases suggest that when one is in a public restroom, a person has a reasonable expectation of privacy which society is prepared to recognize. However, that expectation of privacy is limited by the fact that the restroom is in a public area and one's behavior is subject to the observation of others who are in the public area. When a police officer who is in a public area observes two people using the same restroom stall, and apparently not using the stall for its intended purpose, then these observations may permit the police officer to take further reasonable steps to investigate.").

knocked on the stall door and then pushed it open to discover the defendant in possession of illegal drugs. *Id*. The *Mudloff* court reversed the trial court's determination that the defendant had a reasonable expectation of privacy in the rest room stall. *Id*. at 328. The court adopted the reasoning of *Mercado* and *Tanner* that "an individual can assert a subjective expectation of privacy in a public bathroom stall, but society will not recognize that expectation as reasonable if the stall's occupant is engaged in activity other than the stall's intended use." *Mudloff*, 36 P.3d at 328.

¶ 19. In *Mercado*, an officer observed one pair of feet pointed toward the commode with the legs at an angle towards the door. *Mercado*, 446 N.Y.S.2d at 981. He heard two low, male voices coming from it and upon looking through the space between the door and the doorframe saw the defendant sitting on the flushing unit of the commode with his feet resting on the bowl. *Id*. at 981. The officer entered the adjoining stall and looked over the partition. *Id*. When the other occupant of the stall observed the officer, he threw an envelope containing white powder into the toilet. *Id*. The officer ordered the men out of the stall and placed them under arrest. *Id*..

¶ 20. The court concluded that

[t]he two defendants herein, who occupied one stall in a public rest room and who were engaged in audible conversation, had no reasonable expectation of privacy there . . . . A public rest room stall affords only limited and easily penetrated privacy. The right to privacy is breached when the stall is used for a purpose or in a manner contrary to its intended use.

*Id*. at 984.

¶ 21. Relying in part on *Mercado*, the *Tanner* court likewise concluded that

779

an individual's subjective expectation of privacy is limited when two people are in a stall designed for use by one person. The two people in the stall cannot reasonably expect to be free from intrusion when the outward appearance they give is that they are using the single stall for a purpose other than for what it was intended.

*Tanner*, 537 N.E.2d at 705. The concurring opinion emphasized the circumstances of the case which underpinned the court's holding: (1) that anyone entering the restroom could view the defendant's and his companion's feet and legs; (2) that the top of the door was as low as six feet from the floor; (3) anyone entering the restroom could hear the sniffing sound emanating from the stall; and (4) "the men did not evince an expectation of privacy since they left the stall door unlocked." *Id*. at 705 (Whiteside, J., concurring).

¶ 22. Here, Jones entered the restroom and noted two pairs of feet in one restroom stall. The positioning of the feet was inconsistent with any use of the commode. There was no evidence of either person in the stall needing assistance from the other. Jones heard whispered conversation and noted that the stall door was cracked open and not locked. As noted earlier, Orta failed to take precautions customarily performed by those seeking privacy.[5] These factors favor the State.

---

[5] We reject Orta's reliance on *Buchanan v. State*, 471 S.W.2d 401, 404 (Tex. Crim. App. 1971), in which the court held that two individuals in a public restroom stall had a reasonable expectation of privacy. In that case, the defendant was subject to clandestine surveillance conducted by police officers from concealed positions above the men's restroom in a department store. *Id*. The court held that "[t]he men's restroom at the Sears store had commode stalls with doors which locked from the

¶ 23. Finally, we examine the fifth prong: whether Orta put the restroom stall to private use. We conclude he did not. Although the area is typically intended for private use, Orta was not using it for its intended purpose; rather, he was using it to conduct a drug transaction. In such a situation, we have rejected any argument that the defendant put the area to private use. *See State v. McCray*, 220 Wis. 2d 705, 713, 583 N.W.2d 668 (Ct. App. 1998) (although hiding drugs in the rafters of the basement could be considered a private use of the premises, defendant's use of the premises was not to seek privacy, but rather to access the drug-buying public). This factor also favors the State.

¶ 24. Based on our application of the *Trecroci* factors, we conclude that society is not willing to recognize Orta's claim for an expectation of privacy under these facts as reasonable.

### CONCLUSION

¶ 25. Orta failed to demonstrate a subjective expectation of privacy and also has failed to objectively demonstrate that society is willing to recognize his claim for an expectation of privacy as reasonable. As a result, he did not have standing to challenge Jones' entry into the stall and to seek suppression of the evidence on Fourth Amendment grounds. *See United States v. Salvucci*, 448 U.S. 83 (1980). We reverse the trial court order suppressing the evidence.

---

inside. A person inside such a stall *with the door locked* could be said to have some reasonable expectation of privacy." *Id*. (emphasis added).

*By the Court.*—Order reversed and cause remanded.