# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2020

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Lonnie Maurice Hill, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: October 19, 2004
Filed: January 11, 2005

_____

Before COLLOTON, LAY, GRUENDER, Circuit Judges.

_____

LAY, Circuit Judge.

Lonnie Maurice Hill appeals the district court's[1] denial of his motion to suppress evidence. We affirm the district court.

At approximately 1:00 A.M., a store clerk working at the HandiMart convenience store in Cedar Rapids, Iowa, phoned police to report suspicious activity in the store. The store was located in a known area of prostitution and, after observing a woman and a man enter the store's small restroom, the clerk suspected

_____

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, presiding.

the two were using the restroom as a place for unlawful sexual activity. The single-person restroom, available for use by either men or women, was equipped with one stool and one urinal, but lacked any privacy partitions.

Police officers arrived within four minutes of the call. After conferring with the clerk, the officers knocked on the restroom door, but did not identify themselves as police officers. They received no response. One of the officers then rapped on the door with the end of his flashlight. He heard a jingle like a belt buckle, but otherwise no response. After knocking the second time, the officer used a Leatherman toolkit to unlock the door, but he did not open it. At this point, one of the occupants relocked the door. The officer warned the occupants that he would open the door if they did not come out. The officer then unlocked the door again with the Leatherman kit. This time the female pushed the door open just enough to allow her exit. Thereafter Hill began to exit. However, upon seeing the officer, he turned around and re-entered the restroom. Hill was partially undressed. His pants were unbuttoned, unzipped, and loosely held by the belt. Hill then set something metallic down. Hearing the sound, the officer poked his head into the bathroom through the ajar door and saw a small bag of marijuana and two clear baggies of cocaine on top of a metal wastepaper basket next to the toilet. While leaving the restroom, Hill dropped a t-shirt and a jacket on the floor. Hill was placed under arrest. A metal scale was found in the same shirt Hill left on the floor.

Subsequent to being indicted by a grand jury for possession with intent to distribute 22.62 grams of crack cocaine, for distributing .33 grams of crack cocaine, and for distributing .31 grams of crack cocaine within 1,000 feet of a school, Hill filed a motion to suppress the evidence. The district court, adopting the Report and Recommendation of the magistrate judge, found no Fourth Amendment violation and that Hill had voluntarily abandoned his property in the restroom. Pursuant to the conditional guilty plea, Hill was sentenced to 120 months imprisonment. Hill now

appeals denial of his motion to suppress arguing the evidence was seized in violation of his Fourth Amendment rights. Finding no violation of Hill's Fourth Amendment rights, we affirm the district court.

The Fourth Amendment protects people and not places. *See Katz v. United States*, 389 U.S. 347, 351 (1967). However, "the extent to which the Fourth Amendment protects people may depend upon where those people are." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). In the present case, it was not a single person using the single toilet restroom but two persons of opposite gender and, under the circumstances, we hold that they had a diminished expectation of privacy which had expired by the time the officers had arrived. To invoke the protection of the Fourth Amendment, one must establish a legitimate expectation of privacy in the invaded place. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

We have held that a person using a public restroom enjoys a reasonable expectation of privacy in being shielded from view by the privacy partitions in the restroom. *United States v. White*, 890 F.2d 1012, 1015 (8th Cir. 1989). However, we have never held that this expectation lasts indefinitely. In fact, we have held that an occupant of a public restroom, even after locking the door, waived his right to privacy by failing to reassert it after repeated requests to enter. *See United States v. Esparza*, 162 F.3d 978, 980 (8th Cir. 1998). Additionally, "a[n] expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987). These cases recognize that regardless of one's subjective expectation of privacy in a public restroom, society's recognition of that expectation of privacy is limited by the physical design of the restroom, the location of the restroom, and the probability that one will be asked to surrender use of the restroom to others.

In the present case, the restroom was designed for use by one person, it was located in a convenience store, and available for use by customers and guests of the

store.  Hill and his female companion occupied the restroom in a manner for which it was not designed, and remained there after being asked to leave.  Under these circumstances, we hold that whatever reasonable expectation of privacy Hill and his companion had expired by the time the officers arrived.  Any search that may have occurred did not violate Hill's Fourth Amendment rights.[2]

There is no question, based upon what the store clerk pointed out to the officers, there was an entry by the man and woman into the small convenience store restroom.  The store was located in an area that was known to have a high prostitution rate. Furthermore, although the door was locked, the police could reasonably believe the store clerk had authority to consent to the search of the common room.  *See United States v. Brokaw*, 985 F.2d 951, 953 (8th Cir. 1993).

In *Esparza*, 162 F.3d 978, the owner of the apartment building gave his consent to an invasion of a small common room which was a restroom and it was locked only on the inside with a latch.  Under the circumstances, when Hill did not respond to multiple knocks on the door by the officers when requesting entry to the restroom, the officers could reasonably believe that the store clerk had authority to consent to a search of the common room.

Because there was no reasonable expectation of privacy when the officers arrived, the unlocking of the door by a toolkit was not a violation of the Fourth Amendment nor may it be said that on further knocking of the door the exit by the woman occupant in the restroom was in any sense coercive.  In view of the fact that Hill and his female companion did not have a reasonable expectation of privacy, we

---

[2]Of course, each factual circumstance should be evaluated on its own.  Clearly, our conclusion regarding Hill and his companion may stand on different footing than say a child and a parent or where one person because of a disability or some other medical reason may need assistance.

hold that there was no violation of the Fourth Amendment under the circumstances. We thus affirm the district court.

AFFIRMED.

_____