STATE of Wisconsin, Plaintiff-Respondent,

v.

Timothy L. NEITZEL, Defendant-Appellant.

Court of Appeals

*No. 2007AP2346–CR. Submitted on briefs May 13, 2008.
—Decided August 21, 2008.*

2008 WI App 143

(Also reported in 758 N.W.2d 159.)

210

On behalf of the defendant-appellant, the cause was submitted on the briefs of *David A. Nelson*, West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Pamela Magee*, asst. attorney general and *J.B. Van Hollen*, attorney general.

Before Higginbotham, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. The issue on this appeal is whether the arresting officers violated Timothy Neitzel's Fourth Amendment right to be free from unreasonable searches when they unlocked a gas station restroom he occupied. The resolution of this issue turns on whether Neitzel had standing to assert this claim. We conclude Neitzel did not have standing be-

cause, at the time the officers unlocked the door, he did not have an expectation of privacy that society is willing to recognize as reasonable.

¶ 2. Therefore, although our analysis differs from that of the circuit court, we affirm the court's order denying Neitzel's motion to suppress evidence and the judgment of conviction for operating a motor vehicle while under the influence of an intoxicant (OWI), fifth offense, contrary to Wis. Stat. § 346.63(1)(a) (2005–06).[1]

## BACKGROUND

¶ 3. Neitzel was charged with OWI, fourth offense,[2] after he was arrested at a gas station where he had been occupying the restroom. He moved to suppress the evidence on the ground that the arresting officers had unlawfully entered the locked restroom without a warrant, thus violating his Fourth Amendment right to be free from unreasonable searches. The only witnesses at the hearing on the motion were two of the three arresting officers. They testified as follows.

¶ 4. Dennis Walston of the Dodge County Sheriff's Department arrived at the gas station in response to a dispatch about a possible intoxicated driver who had pulled into the parking lot. It took him about ten minutes to get to the gas station. He saw a parked vehicle, the only one in the parking lot, that met the description and had the license plate number given by the caller. No one was in the vehicle. Officer Walston watched the vehicle for approximately ten minutes. Two

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] Although Neitzel was charged with OWI, fourth offense, the charge was ultimately amended and he was convicted of OWI, fifth offense. *See* paragraph 10 and note 3, *infra*.

other officers then arrived and the three continued to observe for another ten minutes. During this time they saw a man come out of the men's restroom, which had a door opening to the outside of the building, and walk toward the front of the building; almost immediately he walked back into the restroom. Officer Walston did not believe the man saw them. After about fifteen more minutes, during which time the officers saw no one come out of the restroom, Officer Walston went into the store to speak to the two clerks.

¶ 5. The clerks told Officer Walston that a male had come in, looked disoriented, made a statement that he was too tired to drive, and asked about a telephone. He also told the clerks that he was driving on the wrong side of the roadway, that he probably should not continue to drive, and also that he could continue to drive but he did not want to. The clerks stated the man had been in the restroom approximately twenty to twenty-five minutes. In response to Officer Walston's questions, the clerks explained that the restroom could not be opened without a key; one key had been given to the man and the clerks had the second key. A clerk gave the second key to Officer Walston at his request.

¶ 6. After this conversation, which took about five minutes, the three officers went to the men's restroom door, knocked—a series of knocks—and identified themselves as sheriff's department officers. There was no response. They waited about thirty to forty-five seconds, and, with no one answering, they used the key and opened the door. The restroom had a single toilet and sink. Officer Walston saw a man seated on the toilet, his head in his hands and his eyes closed. He appeared to be sleeping. The officers identified themselves again. The man appeared startled. He stood up and pulled his pants up. The officers closed the door, telling him to come out

because they needed to talk to him; they did not go into the restroom. The man came out in ten or fifteen seconds.

¶ 7. Officer Walston testified that his motive in opening the restroom door was to see if there was a medical emergency or if the man was so impaired he might be a danger to himself or others.

¶ 8. The testimony of Officer Brock Cotter, who arrived at the gas station after Officer Walston, was consistent with that of Officer Walston. Officer Cotter testified that Officer Walston was the one who knocked and announced who they were. He, Officer Cotter, heard the knock and described it as "a pound of the fist, pound, pound," but he did not recall how many times. According to Officer Cotter, after Officer Walston knocked, they waited approximately thirty to forty seconds for a response and they did not hear anything. He thought that was enough time for someone to either respond or come out.

¶ 9. The circuit court denied Neitzel's motion. It concluded that, although Neitzel had standing to raise his Fourth Amendment claim, there was no Fourth Amendment violation because there were exigent circumstances, making a warrant unnecessary. With respect to standing, the court determined that Neitzel had established that he had a subjective expectation of privacy and that his expectation of privacy was objectively reasonable. In making this latter determination, the court found that Neitzel had entered the restroom with the intent of using it for its intended purpose and had remained there between twenty-five and forty minutes. The court also found that it "appear[ed] . . . he dozed off, either from fatigue, or intoxication, or a combination of the two." The court stated that, "although a reasonable expectation of privacy in a public restroom dissipates to

214

some extent with the passage of time," the amount of time that had passed in this case was not enough to reach the point at which there was no reasonable expectation of privacy. With respect to the exigent circumstances exception to the warrant requirement, the court determined that the circumstances known to the officers would lead reasonable officers to be concerned about Neitzel's health.

¶ 10. After the court denied Neitzel's motion, the OWI, fourth offense charge was amended to OWI, fifth offense because of Neitzel's conviction on a separate OWI charge.[3] Neitzel entered a guilty plea to OWI, fifth offense. The court withheld the sentence and placed him on probation for three years.

## DISCUSSION

¶ 11. On appeal Neitzel's position is that the circuit court correctly concluded he had standing to make a Fourth Amendment claim but erred in concluding that exigent circumstances justified the officers unlocking and opening the restroom door without a warrant.[4] The State responds that the circuit court erred in conclud-

---

[3] The amendment was accomplished by filing a new criminal complaint on the OWI, fifth offense charge, a felony, and dismissing the initial complaint.

[4] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, section 11 of the Wisconsin Constitution provides:

> **Searches and seizures.** SECTION 11. The right of the people to be secure in their persons, houses, papers, and effects against

ing that Neitzel had standing, but even if he did have standing, the court's conclusion on exigent circumstances was correct. Because we conclude Neitzel did not have standing, we do not address the issue of exigent circumstances.

■■

¶ 12. In *State v. Orta*, 2003 WI App 93, ¶ 11, 264 Wis. 2d 765, 663 N.W.2d 358, we stated:

> When assessing a defendant's standing to challenge a search under the Fourth Amendment, the critical inquiry is "whether the person ... has a legitimate expectation of privacy in the invaded place." A defendant bears the burden of establishing his or her reasonable expectation of privacy by a preponderance of the evidence. Whether a person has a reasonable expectation of privacy depends on (1) whether the individual has exhibited an actual, subjective expectation of privacy in the area inspected and in the item seized; and (2) whether society is willing to recognize such an expectation of privacy as reasonable.

(Citations omitted.)

■

¶ 13. In reviewing the circuit court's ruling on a motion to suppress evidence on Fourth Amendment grounds, we accept its factual findings unless they are clearly erroneous and we decide de novo the legal ques-

---

unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Neitzel does not make a separate argument under the Wisconsin Constitution and we therefore refer only to the Fourth Amendment.

tion whether those facts meet the legal standard for standing. *See id.*, ¶ 10.

¶ 14. The State concedes that the facts found by the circuit court support the conclusion that Neitzel had an actual subjective expectation of privacy. We accept this concession and focus on the second part of the test—whether society is prepared to accept that expectation of privacy as reasonable.

■■

¶ 15. In determining whether society is willing to recognize an expectation of privacy as reasonable, we consider the following factors:

1. Whether the person had a property interest in the premises;

2. Whether the person was legitimately on the premises;

3. Whether the person had complete dominion and control and the right to exclude others;

4. Whether the person took precautions customarily taken by those seeking privacy;

5. Whether the person put the property to some private use; and

6. Whether the claim of privacy is consistent with historical notions of privacy.

*Id.*, ¶ 14 (citation omitted). These factors are neither controlling nor exclusive; rather the totality of the circumstances is the controlling standard. *Id.*

¶ 16. In *Orta* we applied these six factors to a search in a public restroom, although the factual circumstances were different. In *Orta* the officer entered a public restroom that had four stalls and observed two individuals in one of the stalls: he could see the tops of

217

their heads and their feet and he determined they were adults. *Id.*, ¶ 3. He could hear a whispered conversation but could not hear what they were saying. *Id.* From the position of their feet he determined they were facing each other, with their feet perpendicular to the toilet. *Id.*, ¶ 4. The door to the stall was cracked open and not locked, although the officer could not see into the stall. *Id.* The officer knocked on the door and pushed it open. *Id.* The man who was not the defendant had in his hand a clear baggie containing white powder, which he threw into the toilet. *Id.* A subsequent consensual search of the defendant produced a baggie containing cocaine. *Id.*

¶ 17. Applying the six factors to the facts in *Orta*, we concluded the defendant did not have an expectation of privacy in the bathroom stall that society was willing to recognize as reasonable. *Id.*, ¶ 24. Significant to our analysis were the facts that the stall door was unlocked, there were two adults in the stall, and they were using the stall for a drug transaction. *Id.*, ¶¶ 16, 22, 23.

¶ 18. The circuit court here applied the six-factor test as explained in *Orta*. However, its analysis and conclusion differ from ours, primarily because of the significance we attach to the lack of response to the officer's knocking.

¶ 19. Considering the first two factors together, there is no dispute that Neitzel did not have a property interest in the restroom and that he was legitimately in the restroom, at least when he first occupied it. In *Orta*, as in this case, the defendant did not have a property interest in the bathroom stall and we found he was legitimately there. *Id.*, ¶ 15. In spite of the absence of a property interest, we concluded in *Orta* that the first as well as the second factor favored the defendant. *Id.* We

218

explained that it was not necessary to have a property right in the invaded place in order to claim Fourth Amendment protection, and we referred to the cases in other jurisdictions that have "appl[ied] the protections of the Fourth Amendment to the privacy expectations of an occupant of a partially or wholly enclosed stall in a public restroom." *Id.* Following *Orta*, we conclude the first and the second factors favor Neitzel.

¶ 20. The third factor—whether Neitzel had complete dominion and control and the right to exclude others—requires an analysis of the circumstances under which Neitzel first entered the restroom and what transpired thereafter. The fact that the restroom has one toilet, a key is needed to open it, and it locks when a person closes the door gives the occupant control and the ability to exclude others. However, that control and ability to exclude others is limited by the fact that the gas station staff has another key and the occupant has no control over whether the staff opens the restroom door with the key or gives it to another person who does. We agree with the circuit court that the fact that an occupant of this type of restroom does not have *absolute* control over the entry of others does not in itself mean this factor weighs against him or her: there may nonetheless be a right, though not absolute, to exclude others. *See id.,* ¶¶ 16, 17 n.3 (referring to cases from other jurisdictions that recognize in some circumstances a reasonable expectation of privacy when an individual is using a public restroom stall). However, when we examine the length of time Neitzel was in the restroom together with the facts surrounding the officer's knocking, we conclude Neitzel did not have the right to exclude others at the point in time when the officers unlocked the door.

¶ 21. The circuit court found Neitzel was in the restroom for between twenty-five and forty minutes. Even twenty-five minutes—with Neitzel's brief exit and reentrance—is an unusually long time to use a public restroom for its intended purpose. When Officer Walston knocked on the door there was no response. The uncontroverted testimony was that he pounded with his fist. We conclude that whatever right Neitzel had to exclude others from entry no longer existed when he did not respond to the knock. He did not have a right to exclude others indefinitely because the very nature of a public restroom is that others will want to use it; and he did not have a right to continue to exclude others after twenty-five minutes without at least responding to the knock. *See United States v. Hill*, 393 F.3d 839, 841 (8th Cir. 2005) (although there is a reasonable expectation of privacy in being shielded from view by the privacy partitions when using a public restroom, that expectation does not last indefinitely; moreover, the right to privacy is waived, even when the door is locked, by failing to reassert it after repeated requests to enter); *see also Kirsch v. State*, 271 A.2d 770, 772 (Md. Ct. Spec. App. 1970) (not reasonable to expect exclusive use of gas station restroom where length of use far exceeds normally permissible limits).[5]

---

[5] The State refers us to cases from other jurisdictions in which courts have concluded that there was no reasonable expectation of privacy in a public restroom after thirty minutes. *See Kirsch v. State*, 271 A.2d 770, 772 (Md. Ct. Spec. App. 1970); *People v. Hunt*, 259 N.W.2d 147, 149 (Mich. Ct. App. 1977). However, we do not establish a period of time beyond which there is no reasonable expectation of privacy. Instead, our analysis takes into account the period of time Neitzel was occupying the restroom *coupled with* the knocking and lack of response.

¶ 22. We conclude Neitzel did not have complete dominion and control of the restroom and did not have the right to exclude others after he failed to respond to the officer's knock. Therefore, we weigh the third factor against Neitzel.

¶ 23. Turning to the fourth factor, we conclude Neitzel did not take the precautions customarily taken by those seeking privacy. While he did close the door, thus locking it, he did not respond to the officer's knock. A person seeking privacy while using a public restroom of this type would customarily respond to a knock on the door by explaining how much longer he or she would be occupying the restroom. We therefore weigh this factor against Neitzel.[6]

¶ 24. The fifth factor is whether the person put the property to some private use. We explained in *Orta* that this inquiry, in the context of use of a public restroom, is whether the defendant is using it for its intended purpose. *See Orta*, 264 Wis. 2d 765, ¶ 23. The circuit court here found that Neitzel entered the restroom with the intent to use it for its intended purpose. The court found that, although Neitzel "apparently dozed off, either from fatigue or intoxication or a combination of the two," he was still seated on the toilet with his pants down; he was not passed out on the floor or drinking or using drugs. The court concluded this factor favored neither Neitzel nor the State.

---

[6] We disagree with the State that Neitzel did not take precautions customarily taken by those seeking privacy because the door locked automatically when it was closed and he himself did not lock it. It is reasonable to infer that persons using the restroom would understand the door locked when they closed it. Under these circumstances there is no need for a person seeking privacy to lock the door himself or herself.

¶ 25. Based on the court's findings relating to this factor, we conclude it favors the State. Although Neitzel entered the restroom with the intent to use it for its intended purpose, he dozed off. That is not the intended purpose of a public restroom. The fact that he was sleeping while still on the toilet with his pants down, rather than lying on the floor passed out, does not change the fundamental nature of the use to which he was putting the restroom when the officers opened the door: he was sleeping. Neitzel emphasizes that he was not engaged in activity such as illegal drug transactions or other illegal activity that courts have found do not constitute the intended use of a public restroom. *See, e.g., id.* However, the fact remains that sleeping is not an intended use of a public restroom and it is a use that is inconsistent with the ability of other members of the public to use the restroom.

¶ 26. The sixth factor is whether Neitzel's claim of privacy is consistent with historical notions of privacy. The circuit court concluded this factor favored neither Neitzel nor the State, explaining that this, like the fifth factor was "too close too [sic] call." We view this factor as favoring the State. Although the intended use of public restrooms is without doubt an activity that has historically been considered very private, there is no historical basis for considering all activity that takes place within a public restroom to be private. *See State v. Boynton*, 688 A.2d 145, 148 (N.J. Super. Ct. App. Div. 1997) (general acceptance of the notion that individuals are due some degree of privacy in using a public restroom is based on the nature of the events that customarily take place there). In addition, as the case law recognizes, the nature of a *public* restroom limits the privacy one can legitimately expect in using it. *See Hill*, 393 F.3d at 841 (society's recognition of expectation of privacy in using

public restroom is limited by, among other factors, "the probability that one will be asked to surrender use of the restroom to others"). Neitzel's claim of privacy while using the only restroom for males at a gas station for at least twenty-five minutes, without responding to the officer's knocking, is not consistent with historical notions of privacy.

¶ 27. Viewing all six factors together in the context of the totality of the circumstances of this case, we conclude society is not prepared to recognize Neitzel's expectation of privacy as reasonable. While his initial use of the restroom was for its intended purpose, his expectation that he continue to have the private use of the locked restroom for at least twenty-five minutes, without responding to knocking and while dozing off, was not reasonable.

## CONCLUSION

¶ 28. We conclude Neitzel did not have standing to assert a claim for a Fourth Amendment violation based on the officer unlocking the restroom door. Accordingly, we affirm the denial of his motion to suppress evidence, although on different grounds, and affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

¶ 29. DYKMAN, J. (*concurring*). Though I agree with the majority's result, the trial court's reasoning is more practical and less dangerous than the majority's.

¶ 30. I do not agree that after twenty-five minutes, and my failure to acknowledge someone's knock, my interest in privacy in a gas station men's room disappears, and a key can be used to see what I might be doing in there. I might be hearing impaired or disinclined to be hurried by someone who felt that their needs exceeded mine. I might respond negatively to loud pounding which

223

interrupted my thoughts. I might have my head in my hands because that was more comfortable and consistent with my use of the room. I might be reading a magazine left there for anybody's use while waiting. None of this is unheard of. I expect privacy in a locked men's room even if complications require twenty-five minutes of my time, no matter whether someone beats on the door.

¶ 31. The majority's result is dangerous because appellate courts usually do not like bright lines, and the next case will involve a twenty-minute stay in a men's or women's room. And then one of fifteen minutes, until the result is that nobody has an expectation of privacy in a locked rest room if someone knocks. It is far better to conclude, as did the trial court, that Neitzel had an expectation of privacy in the men's room, but that police were justified in entering the men's room based on exigent circumstances. Because the police were told that Neitzel was either highly intoxicated or disoriented, and Neitzel did not respond to the officers' knocking, a police officer could reasonably have a concern about Neitzel's health, and believe that a delay in procuring a warrant might exacerbate the situation. That was the rule we applied in *State v. Leutenegger*, 2004 WI App 127, 275 Wis. 2d 512, 685 N.W.2d 536. That rule requires an examination of the facts of the case to determine whether exigent circumstances existed. It does not depend on an artificial decision dependent on the timing of a person's stay in a rest room and how long or loudly police pounded on the door. It is also consistent with the public's understanding about privacy in rest rooms. Were I writing for the majority, I would adopt the analysis used by the trial court. But I am not and I can only respectfully concur.